Ernesto **GONZALEZ**,
Petitioner–Appellant,

v.

James E. **SULLIVAN**,
Respondent–Appellee.

No. 926, Docket 90–2455.

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1991.

Decided May 28, 1991.

Julius M. Wasserstein, New York City, for petitioner-appellant.

Moira E. Casey, Asst. Dist. Atty., Kings County, Brooklyn, N.Y. (Charles J. Hynes, Dist. Atty., Jay M. Cohen, Asst. Dist. Atty., Kings County, Brooklyn, N.Y., of counsel), for respondent-appellee.

Before OAKES, Chief Judge, CARDAMONE and WALKER, Circuit Judges.

CARDAMONE, Circuit Judge:

We have before us an appeal from a judgment of the United States District Court for the Eastern District of New York (Weinstein, J.) denying the petition of Ernesto Gonzalez for a writ of habeas corpus made pursuant to 28 U.S.C. § 2254. The adage "forewarned is forearmed" means essentially that in order to respond one must be alerted. Decisive to our holding is that a state court must be given fair warning of the federal nature of a petitioner's claim before it can be said to be exhausted. From the dismissal of his petition Gonzalez raises four claims: (1) the prosecutor's summation was prejudicial, (2) putting him in a lineup before arraignment on the charge for which he was arrested delayed the time when his right to counsel attached, violating his due process rights, (3) delaying the arraignment caused his right to counsel to attach at the time of the lineup, and (4) the lineup was unduly suggestive.

All these claims are procedurally barred: The summation claim is barred at least in part because petitioner failed to make an objection at trial sufficient to preserve most of his claims under state law; and the other three claims are barred because petitioner failed to raise them on his direct appeal in the state courts. Petitioner has failed to show cause for these defaults or actual prejudice arising from them. These defaults constitute independent and adequate state grounds that prevent federal review of these issues on a habeas corpus application. To the extent the summation claim is not procedurally barred, we think it is an extremely close case as to whether petitioner exhausted his state remedies. But, because our decisions regarding exhaustion contain language under which we could arguably conclude petitioner exhausted this claim by fairly presenting it to the New York State courts, we proceed to consider the summation claim on the merits, and conclude it has no merit. Accordingly, we affirm.

FACTS

Petitioner was convicted of two counts of murder in the second degree in New York State Supreme Court, Kings County, on November 14, 1980. The crimes occurred on June 17, 1979 when Gonzalez and two accomplices entered a Brooklyn grocery store and shot and killed the owner and a store worker. The police stopped Gonzalez and one of the accomplices on June 20, 1979 at 9:45 p.m. because the men and the automobile they were riding in matched a description of the murder suspects. When the police discovered a gun in the car, Gonzalez was arrested on a gun charge. Early on the morning of June 21, 1979 the detective assigned to the murder case called the District Attorney's Office, reported the arrest, and said a lineup was needed. Due to the temporary unavailability of a witness to the murders and because of the lack of "fillers" for the lineup, some delay ensued. When the detective signed Gonzalez out of police custody in the precinct's Central Booking area to take him to the lineup, he was being processed on the gun charge. At the lineup held in the District Attorney's office at 12:42 p.m. the witness identified petitioner as one of the men she saw fleeing the scene of the crime.

Gonzalez was arraigned on June 22, 1979. When he moved to suppress the lineup identification on the grounds it was improperly suggestive, the New York court held a *Wade* hearing and denied the motion. Although his first trial ended in a mistrial, Gonzalez was convicted at his second trial of two counts of murder in the second degree. He appealed the conviction to the Appellate Division of the New York State Supreme Court, Second Department, arguing that he was denied a fair trial because the prosecutor's closing summation had been inflammatory and his sentence of two consecutive terms of 25 year to life was excessive. The Appellate Division affirmed the convictions, but modified the sentences to run concurrently. With respect to the summation claim, the Appellate Division stated:

Although several of the prosecutor's remarks were better left unsaid, defendant failed to register an appropriate protest sufficient to preserve a question of law as to most of them, and we decline to exercise interest of justice jurisdiction inasmuch as we do not believe that they operated to deprive the defendant of a fair trial.

*People v. Gonzalez*, 102 A.D.2d 895, 477 N.Y.S.2d 66 (2d Dep't 1984). The New York State Court of Appeals denied leave to appeal on August 27, 1984.

Gonzalez then moved in the Supreme Court, Kings County, for an order vacating his conviction on essentially the same four grounds that he raises in the instant habeas petition. The motion to vacate was denied on September 4, 1985 because the claims regarding the lineup and arraignment, the state court noted, were procedurally barred under state law because they had not been raised on direct appeal, the summation claim had already been determined on direct appeal, and all the claims lacked merit. The Appellate Division denied Gonzalez' motion for leave to appeal the denial of the motion to vacate on November 4, 1985.

On May 19, 1988 Gonzalez filed the present petition. After holding hearings on the arraignment and lineup issues, the district court dismissed it on the merits, concluding Gonzalez had no right to counsel at the lineup, there was no evidence the delay was designed to prevent his right to counsel from attaching, the summation did not deny Gonzalez a fair trial, and the lineup was not unduly suggestive.

## DISCUSSION

### I Procedural Defaults

Habeas review has continued to present problems of ambiguity with respect to whether a state court rendered its judgment on defendant's procedural default. The Supreme Court has recently resolved the problem ruling that where a state court rests its decision primarily on federal law, a federal court may review it "unless the state court's opinion contains a ' "plain statement" that [its] decision rests upon

adequate and independent state grounds.' " *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989), (quoting *Michigan v. Long*, 463 U.S. 1032, 1042, 103 S.Ct. 3469, 3477, 77 L.Ed.2d 1201 (1983)). Even where there is a procedural default, as here, federal consideration of defendant's claim is proper "unless the last state court rendering a judgment in the case ' "clearly and expressly" ' states that its judgment rests on a state procedural bar." *Id.* at 1043, 103 S.Ct. at 3478, quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985). In the instant case, the *Harris* rule is not an issue because the state court ruled adversely to petitioner on one of his claims—plainly stating that its decision rested on independent state grounds—and further because petitioner failed to raise his other federal claims on direct appeal in state court.

Following the "well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts," *see Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503, 53 L.Ed.2d 594 (1977), citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 56 S.Ct. 183, 80 L.Ed. 158 (1935), the Supreme Court has held that a procedural waiver under state law sufficient to prevent review of the defendant's substantive claim in the state courts also constitutes an independent and adequate state ground that bars federal consideration of the substantive claim on habeas corpus. *Id.* at 87, 97 S.Ct. at 2506. Thus, under *Sykes* and its progeny a petitioner seeking habeas relief may not raise a claim upon which he has procedurally defaulted in the state courts unless he is able to show cause for the default and prejudice resulting therefrom. *Wainwright*, 433 U.S. at 87–91, 97 S.Ct. at 2506–08; *Engle v. Isaac*, 456 U.S. 107, 124–35, 102 S.Ct. 1558, 1570–75, 71 L.Ed.2d 783 (1982); *Teague v. Lane*, 489 U.S. 288, 298, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989).

### A. *The Lineup and Arraignment Claims*

Petitioner admits that the lineup and arraignment claims "were procedurally

barred in New York, because his initial post-conviction attorney did not raise them on direct appeal to the Appellate Division." Gonzalez makes no attempt to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Instead—in what appears to be an attempt to show cause for the default—petitioner's reply brief ascribes the procedural default to an error of counsel. In taking this position, he invokes the deliberate and knowing waiver standard originally adopted in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), apparently unaware of the fact that *Wainwright* abandoned that portion of *Fay.* 433 U.S. at 87–91, 97 S.Ct. at 2506–08. In any event, attorney error that *does not rise* to the level of ineffective assistance is not cause for a petitioner's procedural default. *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. To the extent that petitioner's reliance on counsel error may be an invocation of an ineffective assistance of counsel claim, this claim has not been presented to the state courts; hence we may not consider it. *See Duckworth v. Serrano,* 454 U.S. 1, 2–4, 102 S.Ct. 18, 18–19, 70 L.Ed.2d 1 (1981) (per curiam).

### B. *The Summation Claim*

■ Petitioner does not contest that the summation claim is also procedurally barred. He admits his trial attorney failed to make sufficient objections on the record or to request curative instructions. Gonzalez alleges that the procedural default is excused because trial counsel's failure to object was not a "tactical decision." Again, whether or not the failure to object was a tactical decision is irrelevant to the question of procedural default. *See Murray,* 477 U.S. at 488, 106 S.Ct. at 2645.

### C. *Fundamental Injustice*

■ Gonzalez also asserts that all of the procedural defaults are excused because in the aggregate of the issues he has raised demonstrate a "fundamentally unjust incarceration and unfair trial." It is true that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray,* 477 U.S. at 496, 106 S.Ct. at 2649; *Smith v. Murray,* 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). Nothing in the record leads us to believe that petitioner is actually innocent of the crimes for which he was convicted.

### II  Exhaustion

On direct appeal in the state courts, the Appellate Division held only that some of the objections to the prosecutor's summation were procedurally barred, without specifying which ones they were. Since it is not possible to decipher those claims the state court held were barred, we consider whether the petitioner exhausted his summation claim in the state courts.

Before a federal court may address the merits of any constitutional issue on a writ of habeas corpus, the petitioner must have exhausted all available state remedies as to that issue. 28 U.S.C. § 2254(b), (c) (1988). Section 2254(b) specifically provides that a habeas application "shall not be granted" unless the petitioner has exhausted "the remedies available in the court of the State," unless no state remedy for the deprivation of a federal constitutional right exists or, if such remedy exists, it is ineffective to protect petitioner's rights. If the petitioner has a right under state law to raise the federal question raised by any available procedure, his state remedies "shall not be deemed to have [been] exhausted." 28 U.S.C. § 2254(c).

Courts have therefore consistently held that any constitutional claim must have been "fairly presented to the state courts." *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (in banc) (petitioner must have informed the state court of both the factual and legal premises of the claim asserted in federal court).

In this case the district court held, without discussion, that petitioner's citation to the Fourteenth Amendment in a heading in his brief sufficiently alerted the state courts to the federal constitutional nature of the summation claim. In *Daye* we stated that "[o]bviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts." *Daye*, 696 F.2d at 192. Petitioner's brief to the Appellate Division asserted that

> The prosecutor's summation, which was overwhelmingly vengeful in tone, containing appeals to the community's sense of outrage at crime, attacks on appellant's character and on defense counsel's role as an advocate, and other improprieties, deprived appellant of a fair trial (U.S. Const., amend XIV; N.Y. Const., art. I, § 6).

Although we think this complies with the above-quoted language in *Daye*, it is troubling that petitioner failed to support his allusion to the Fourteenth Amendment with citations to any federal authority. Recognizing that the goal of requiring the exhaustion of state remedies is "simply to ensure that the federal courts not intrude upon state proceedings unless and until the state courts have been given a fair opportunity to consider and act upon the claims on which the habeas petition is based," *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir.1979), it is plain that a state court must first have been given appropriate warning as to the federal nature of the claim before a federal court will consider it.

Further, to allow a petitioner to exhaust his remedies merely by alluding to the federal constitution, without providing the state court at least a minimal argument on its application, undercuts this policy. In the instant case Gonzalez called attention to a notion of rights the sweep of which is wide-ranging. Rather than producing citations to federal cases, his brief was directed solely to state law principles. Petitioner was represented by counsel; and under our adversary system, the minimal burden of supplying at least one federal case and fashioning a legal argument directed particularly to federal constitutional principles should fall on the petitioner, not the state courts.

Hence, we think it would be better practice for counsel when relying on a broad constitutional doctrine like the Fourteenth Amendment to support the claim with a factual premise and by citation to federal cases. Because we believe nonetheless that petitioner at least arguably complied with the exhaustion requirements set forth in *Daye*, we proceed to consider the merits of petitioner's summation claim.

### III   Merits of Summation Claim

During his summation the prosecutor referred several times to people in the neighborhood, and particularly witnesses to the crime being afraid to testify, and he stated that John Malavet and Irene Velez, the two prosecution witnesses who saw the crime, were courageous to have come forward. The prosecutor also made particular reference to threats because there was evidence at trial that Malavet had been threatened and had fled upstate for two weeks in response, "All in a community that cries out for safer streets but won't come forward." The prosecutor also warned the jury not to be sidetracked by the defense's attack on Malavet, who testified that he and Velez were engaged, or at least dating, though Velez denied it.

In addition, the prosecutor, in response to defense counsel's argument that Malavet was lying about having seen the crime because he wanted to impress Velez, said "There is no reason to lie. He did not lie. I will submit he did not lie." The trial court sustained the defense counsel's objection to this statement, but overruled an objection immediately thereafter when the prosecutor repeated that Malavet had no reason to lie. The prosecutor also told that jury:

> Talk about injustice, talk about what happened in that bodega. Talk about a guy who works 14 hours a day, seven days a week. Talk about a guy who works seven years in a factory to save up money to buy a bodega. Talk about

these dreams and when that man went in and shattered those dreams in a minute and blew them to smithereens. Tell me about that and tell me about injustice.

█ A criminal conviction "is not to be lightly overturned on the basis of a prosecutor's comments standing alone" in an otherwise fair proceeding, *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985). In order to reach the level of a constitutional violation, a prosecutor's remarks must "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986); *Garofolo v. Coomb*, 804 F.2d 201, 206 (2d Cir.1986). Prosecutorial misconduct during summation is grounds for reversal only when the remarks caused "substantial prejudice" to the defendant. *United States v. Tutino*, 883 F.2d 1125, 1136 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990); *United States v. Nersesian*, 824 F.2d 1294, 1327 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987). We must assess how prejudicial the prosecutor's conduct was, what measures, if any, the trial court used to cure the prejudice, and whether conviction was certain absent the prejudicial conduct. *See United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982).

█ Although the prosecutor in the case at hand did not do anything so egregious as to comment on the defendant's failure to take the stand or the defendant's invocation of his fundamental rights, he overstepped the bounds of proper summation. Yet, to the extent that he argued that Malavet had no reason to lie, the defense's summation invited this response by arguing that Malavet had testified only to impress the other key prosecution witness. In this context, the prosecutor's response is unlikely to have affected the jury's ability to judge the evidence fairly. *Young*, 470 U.S. at 12–13, 105 S.Ct. at 1044–45. The prosecutor's personal voucher of Malavet's truthfulness, of course, was improper and the state trial court sustained defense counsel's objection on that point. The district attorney's comments regarding the virtuous nature of the owner of the bodega and his reference to the community's cry for safer streets were also inappropriate. His reference to fear in the community was to a certain degree based on the evidence in the case, though his comments in this regard, as well, overstepped the bounds of fair prosecutorial summation.

But here, as a balance, the trial court took curative action. Besides sustaining an objection to the prosecution's voucher of Malavet's truthfulness, it also instructed the jury that the summations were not evidence and that the jury was the sole judge of the facts. Moreover, the evidence against petitioner was strong. Two witnesses saw him as he ran from the scene of the crime, and both identified him later as that individual. Petitioner was arrested in a car in which money stolen from the store was found. Given the court's corrective actions and the strength of the evidence against the petitioner, the prosecutor's summation did not render the trial fundamentally unfair.

## CONCLUSION

In sum, petitioner's claims are procedurally barred. Even if his entire summation claim is not procedurally barred, it is without merit. The district court's judgment denying the petition for habeas corpus is affirmed.

Judgment affirmed.

OAKES, Chief Judge, concurring:

What a marvelous Catch–22 the law of federal habeas corpus now is! You lose in state court because your counsel did not make a timely objection. Your federal habeas petition is barred because no "objective factor external to the defense impeded [your] counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), and you therefore cannot show "cause" and "prejudice" un-

der *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). And, since you have not raised the point that your trial counsel's default was incompetency, that issue cannot be considered by the federal court. But if it is raised in a subsequent petition, it will be considered an abuse of the writ, *McCleskey v. Zant,* —— U.S. ——, ——, 111 S.Ct. 1454, 1466–68, 113 L.Ed.2d 517 (1991), because it was not raised previously.

The dialogue between federal and state courts so penetratingly examined, for example, by the late Robert M. Cover and T. Alexander Aleinikoff in their seminal piece, *Dialectical Federalism: Habeas Corpus and the Court,* 86 Yale L.J. 1035, 1052 (1977), is now in a very real sense a monologue, much like it was at the time of *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), and before *Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923) and *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935) led to *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Thus, no longer is it true that "no conviction can stand unless both [state and federal] tribunals concur." 86 Yale L.J. at 1052. Rather, as long as the state courts approve, a conviction will more often than not be immune from federal court scrutiny, even where federal constitutional rights have clearly been violated.

So too has the Court turned back the clock with the guilt/innocence emphasis referred to in *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649 and *Smith v. Murray,* 477 U.S. 527, 537–38, 106 S.Ct. 2661, 2667–68, 91 L.Ed.2d 434 (1986). As Cover and Aleinikoff so aptly point out, reducing analysis of a constitutional right to its functional level leads to a cost-benefit determination which is inconsistent with the very idea of a right. *See* 86 Yale L.J. at 1092–95. This is of course what happened to the exclusionary rule when the Court began to analyze it solely in terms of its deterrent effect, rather than as a constitutional requirement as it had previously been analyzed, for example, in *Weeks v. United States,* 232 U.S. 383, 391–92, 398, 34 S.Ct. 341, 343–44, 346, 58 L.Ed. 652 (1914). *See* Oakes, *The Exclusionary Rule—A Relic of the Past?,* in Constitutional Government in America 151 (R. Collins ed. 1980).

To be sure, there are still some rights that prevent prosecution or punishment irrespective of guilt or innocence—assistance of counsel, double jeopardy, denial of speedy trial, breach of a plea agreement and the like. Perhaps *Miranda* rights still have some of that vitality, *Minnick v. Mississippi,* —— U.S. ——, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), though *Massiah* rights perhaps do not, *Illinois v. Perkins,* —— U.S. ——, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). But the continued focus on guilt or innocence, rather than the fairness of a trial, inevitably will, I fear, result in reduction of the given right's content. Justice Brennan said it all in his dissent in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976):

> The Court ... argues that habeas relief for non-"guilt-related" constitutional claims is not mandated because such claims do not affect the "basic justice" of a defendant's detention ...; this is presumably because the "ultimate goal" of the criminal justice system is "truth and justice." This denigration of constitutional guarantees and *constitutionally mandated procedures,* relegated by the Court to the status of mere utilitarian tools, must appall citizens taught to expect judicial respect and support for their constitutional rights. Even if punishment of the "guilty" were society's highest value—and procedural safeguards denigrated to this end—in a constitution that a majority of the members of this Court would prefer, that is not the ordering of priorities under the Constitution forged by the Framers, and this Court's sworn duty is to uphold that Constitution and not to frame its own. The procedural safeguards mandated in the Framers' Constitution are not admonitions to be tolerated only to the extent they serve functional purposes that ensure that the "guilty" are punished and the "innocent" freed; rather, every guarantee enshrined in the Constitution, our basic charter and the guarantor of our most precious liber-

ties, is by it endowed with an independent vitality and value, and this Court is not free to curtail those constitutional guarantees even to punish the most obviously guilty.

*Id.* at 523–24, 96 S.Ct. at 3066 (citations and footnote omitted) (emphasis in original).

I said the following in my Madison Lecture in 1979, *The Proper Role of the Federal Courts in Enforcing the Bill of Rights,* 54 N.Y.U.L.Rev. 911 (1979):

The point that I am making here is that our accusatorial system is constructed around a series of concerns about individual rights which set limits on the pursuit of truth and the precision of factfinding. On these concerns we have placed a higher value, having learned that not to do so is to permit and foster an oppressive state, since the people who direct or operate its prosecuting machinery may not be presumed always to act out of the highest motivations or with deepest principle. The ascertainment of "truth," an elusive quest at best, then must sometimes yield to this higher value. It may be, as the Chief Justice said in dissent in *Brewer v. Williams,* "absurd," "bizarre," "remarkable," "intolerable" that incriminating statements made in violation of the sixth amendment may not be admissible in evidence, but would it not be even more "bizarre" and "intolerable" if such evidence were admissible? Why stop with the fourth and sixth amendments? Why not admit confessions extracted involuntarily, as judged by present constitutional standards, at least if they turn out to be "true"?

*Id.* at 933–34 (citations and footnote omitted). *But see Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1262–64, 113 L.Ed.2d 302 (1991) (holding that admission of coerced confessions may constitute "harmless error").

I join in the result of the majority's opinion because I am bound to follow the Supreme Court. Whether I do so happily, the reader may be the judge.