Julius LYNES, Petitioner,

v.

Robert MITCHELL, Superintendent,
Eastern Correctional Facility,
Respondent.

No. 94 Civ. 2819 (RPP).

United States District Court,
S.D. New York.

May 2, 1995.

Julius Lynes, Woodbourne, NY, pro se.

Dennis C. Vacco, Atty. Gen., State of N.Y., Monica R. Jacobson, Asst. Atty. Gen., New York City.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

The Report and Recommendation of Magistrate Judge Sharon E. Grubin filed on November 1, 1994 in this petition for a writ of habeas corpus was accepted and the petition dismissed on December 23, 1994. On December 28, 1994, the petitioner moved for reconsideration on the ground that he did not receive a copy of the Report and Recommendation. Accordingly, on January 17, 1995, judgment was vacated and petitioner was ordered to file any objection to the Report and Recommendation by January 25, 1995. On the 8th day of February 1995, the petitioner filed objections to Magistrate Judge Grubin's conclusion that, having failed to assert two grounds in his application for leave to appeal to the New York State Court of Appeals, those two grounds in the instant petition must be dismissed under the procedural forfeiture rule of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Grey v. Hoke,* 933 F.2d 117, 121 (2d Cir.1991); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991).

Petitioner argues that the two grounds were meritorious: (1) that the evidence against him was insufficient for conviction, and (2) that identifications by the victims of the two burglaries in 1990 for which he was convicted were in violation of his rights to due process and a fair trial. Petitioner's other objections to the Magistrate Judge's Report and Recommendation will be described below.

As Magistrate Judge Grubin's Report and Recommendation points out, the record demonstrates that there was sufficient evidence at trial for a jury to convict the defendant of both burglaries and that both victims testified they had observed him at close range inside their apartments under well lighted conditions. Furthermore, since petitioner did not include these two grounds in his application for leave to appeal to the Court of Appeals for the State of New York, the Magistrate Judge was correct in finding that petitioner was procedurally barred from raising them in this proceeding. *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

Petitioner argues that he should not be barred from raising these two grounds since he was unaware that the claims had been abandoned by his counsel until he read the Report and Recommendation. He states that his counsel led him to believe that upon application for leave to appeal, the Court of Appeals would obtain and review the entire record before the Appellate Division.[1] However, "[f]ederal courts may address the merits of a claim that was procedurally defaulted in state court only upon a showing of cause for the default and prejudice to the petitioner." *Bossett,* 41 F.3d at 829 (citing *Wainwright,* 433 U.S. at 87, 97 S.Ct. at 2506). Petitioner has not shown either cause for the default or prejudice. As Magistrate Judge Grubin's Report and Recommendation shows, there was sufficient evidence at trial for the jury to convict and to admit the identifications of the petitioner. Secondly, petitioner has not shown that his attorney did not exercise valid professional judgment in relying only on other grounds in his application for leave to appeal.[2]

1. Magistrate Judge Grubin also observed that petitioner's counsel had not raised before the Appellate Division the two grounds upon which petitioner now relies, and that it was petitioner himself who filed a supplemental brief asserting these grounds.

2. In *Murray v. Carrier,* 477 U.S. 478, 487–88, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986), the Supreme Court rejected a requirement that courts examine the reasons for a failure by defense counsel to raise a claim when ineffective assistance of counsel is not asserted, because such a determination "could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client" (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 [1984]).

Petitioner's last objection to the Report and Recommendation relates to the conduct of a Wade/Huntley hearing before Justice Figueroa on March 5, 1991. Petitioner objects to the Magistrate Judge's finding that he consented to being absent during the testimony of Mr. Valdivia's testimony. The instant petition stated that petitioner's absence was only to be during a sidebar. The record contradicts petitioner's statement that he was removed after the sidebar. Petitioner's letter of April 25, 1991, to Justice Fitzgerald seven weeks after the Wade hearing also contradicts the petition. Lastly, petitioner's traverse in this proceeding contradicts the petitioner. In the traverse, petitioner stated, "As petitioner's April 25, 1991 [letter] motion to the Court made abundantly clear, his informed absence from the hearing was limited solely to that portion covering the complaining witnesses' testimony, and not for the remainder of the hearing." Thus, petitioner admitted in the proceedings before Magistrate Judge Grubin that he consented to his absence from Valdivia's testimony. Petitioner blames the inconsistencies in his claims on this subject to different inmate law clerks drafting his papers for him. However, the petitioner is expected to read documents before signing them. It is hereby ordered that the Report and Recommendation of Magistrate Judge Grubin issued on November 1, 1994 is accepted in accordance with 28 U.S.C. § 636(b), and it is further

Ordered that the petition is dismissed in accordance with the Report and Recommendation.

### REPORT AND RECOMMENDATION TO THE HONORABLE ROBERT P. PATTERSON, JR.

GRUBIN, United States Magistrate Judge:

Petitioner, currently an inmate at the Woodbourne Correctional Facility, *pro se* seeks a writ of habeas corpus under 28 U.S.C. § 2254 to obtain his release from custody pursuant to a December 16, 1991 judgment of the New York State Supreme Court, New York County (Fitzgerald, J.), convicting him after a jury trial of two counts of burglary in the second degree. *See*

N.Y.Penal Law § 140.25(2) (McKinney 1988). Viewing the facts in the light most favorable to the state, *see, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *Garcia v. Warden,* 795 F.2d 5, 6 (2d Cir. 1986), the evidence at trial established that on July 21, 1990, at about 6:00 to 6:30 a.m., when Rene Valdivia awaked in the bedroom of his apartment at 167 East 116th Street in Manhattan, he saw petitioner lunging toward him with outstretched arms. Mr. Valdivia screamed and chased petitioner from his bedroom and out the front door of his apartment. Mr. Valdivia then discovered that he was missing four rings, a bracelet, $600 and a camera and that the lock on his front door had been broken. The next morning, at about 9:30 a.m., Eduardo Montoya was awakened by noise in the apartment at 187 East 116th Street that he shared with his wife, Elizabeth Lopez, and he saw petitioner attempting to take the VCR off the top of the television in his bedroom. Mr. Montoya screamed and chased petitioner from his bedroom, through the apartment and out the front door and up the stairs to the roof. After Mr. Montoya returned to the apartment, Ms. Lopez telephoned the police. Petitioner apparently crossed the roofs of three adjacent apartment buildings, entered 167 East 116th Street from the roof door and walked down the stairs to the lobby where he was observed by Ms. Patricia Lozano. At about 10:00 a.m. Ms. Lopez and Ms. Lozano flagged two police officers, told them about the burglary and gave them a description of petitioner. The officers canvassed the area in a patrol car with Ms. Lopez and Ms. Lozano in the back seat, driving westbound on East 116th Street, and after a few minutes Ms. Lozano spotted petitioner, recognizing him by his clothing and his bald head. After the officers approached and handcuffed petitioner, but before they asked him any questions, he told one of the officers, "you caught me four blocks away and I don't have anything on me." At trial the officer testified as to this statement, and Mr. Valdivia (whose testimony was taken at what is known as a "conditional" examination, made

necessary by his hospitalization for lung cancer, and recorded and played at trial) and Mr. Montoya each identified petitioner as the man who burglarized his apartment, both saying they had observed him inside their apartments at close range under well-lighted conditions.

Petitioner appealed his conviction to the Appellate Division of the New York State Supreme Court, claiming that he was denied his right to be present at part of a *Wade/Huntley* hearing on March 5, 1991, that the trial court erred in appointing substitute counsel for him for Mr. Valdivia's conditional examination rather than have it rescheduled, and that his sentence should be modified. In a supplemental brief submitted *pro se*, petitioner further claimed that the evidence against him was insufficient, that the case against him was based on a series of misidentifications of him by the two complainants, Montoya and Valdivia, and that he was denied effective assistance of counsel. On October 7, 1993 the Appellate Division affirmed the judgment in a brief Memorandum Decision. *People v. Lynes*, 197 A.D.2d 381, 602 N.Y.S.2d 359, 360 (1st Dep't 1993). On November 24, 1993 petitioner applied for leave to appeal to the Court of Appeals of the State of New York on the ground that his right to be present at the *Wade/Huntley* hearing had been violated. On January 10, 1994 leave to appeal was denied. *People v. Lynes*, 82 N.Y.2d 927, 610 N.Y.S.2d 179, 632 N.E.2d 489 (Levine, J.)

In this petition, petitioner attacks his conviction on the following three grounds: (1) the state failed to prove his guilt beyond a reasonable doubt; (2) the misidentifications by Mr. Valdivia and Mr. Montoya violated his rights to due process and a fair trial; and (3) the court "erred in receiving testimony at [the] *Wade* hearing in [the] absence of petitioner."

## DISCUSSION

### Grounds One and Two

■ The requirement of the federal habeas corpus statute, 28 U.S.C. § 2254, that a person in state custody exhaust his or her state remedies before seeking federal habeas corpus review is based on considerations of comity between federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their prisoners' federal constitutional rights. *See, e.g., Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Mercado v. Henderson*, 733 F.Supp. 19, 21 (S.D.N.Y.1990); *Castillo v. Sullivan*, 721 F.Supp. 592, 593 (S.D.N.Y. 1989). Exhaustion requires a petitioner to have fairly presented at each available level of the state courts the same federal constitutional claims, legally and factually, raised in his or her petition to the federal court so that the state courts, including the state's highest court, will have had the opportunity to pass on them. *Picard v. Connor*, 404 U.S. at 275–76, 92 S.Ct. at 512–13; *Daye v. Attorney General of New York*, 696 F.2d at 191; *Klein v. Harris*, 667 F.2d 274, 282–83 (2d Cir.1981). However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9, 103 L.Ed.2d 308 (1989)). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Id.* *See also Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991).

Under the federal procedural forfeiture doctrine:

[W]hen a state prisoner has failed to raise his federal constitutional claim in the state courts in accordance with state procedural rules, including those requiring that claims of constitutional defects in the trial be raised on direct appeal from a conviction, there has been a procedural default that bars federal habeas review unless the petitioner shows both cause for the noncompliance and prejudice resulting from the alleged constitutional violation. The principle is relaxed when the state courts themselves have disregarded the default and

decided the constitutional claim on the merits.

*Roman v. Abrams,* 822 F.2d 214, 222 (2d Cir.1987), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). *See Coleman v. Thompson,* 501 U.S. at 728–33, 111 S.Ct. at 2553–56; *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Although petitioner presented his first and second grounds to the Appellate Division, he did not raise them in his application for leave to appeal to the Court of Appeals which was devoted exclusively to the issue of the alleged violation of petitioner's right to be present at the *Wade/Huntley* hearing, which is Ground Three of his petition herein. Indeed, the four-page letter application from petitioner's appellate counsel to Chief Judge Kaye began: "*The issue* raised by this appeal is whether a defendant's right to be present at a *Wade* hearing is violated when he or she is removed without having waived that right" (emphasis added), and the remainder of the application is argument on that sole issue. These two claims, therefore, have not been exhausted, as the Second Circuit held in a precisely analogous situation in *Grey v. Hoke,* 933 F.2d at 120. However, petitioner can no longer present these claims to the New York Court of Appeals or any other New York court because he has defaulted on them under New York law. As was the case in *Grey v. Hoke,*

> ... New York procedural rules plainly bar petitioner from attempting to raise [these two] claims before the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *See* N.Y.Court Rules § 500.10(a). Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y.Crim.Proc.Law § 440.10(2)(a); *see also* N.Y.Crim.Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review).

*Id. See also Washington v. James,* 996 F.2d 1442, 1446–47 (2d Cir.1993), *cert. denied,* —

U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991); *Holmes v. Bartlett,* 810 F.Supp. 550, 555 (S.D.N.Y.1993). Our review of them, therefore, is appropriate at this time. However, because petitioner has not made any showing of cause or prejudice for his state procedural defaults on these two claims, we cannot consider them on the merits and they must be dismissed under the procedural forfeiture doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Grey v. Hoke,* 933 F.2d at 121; *Gonzalez v. Sullivan,* 934 F.2d at 422; *Holmes v. Bartlett,* 810 F.Supp. at 555.

*Ground Three*

At the *Wade/Huntley* hearing conducted before Justice Nicolos Figueroa on March 5, 1991, petitioner was present for the testimony of the two officers who arrested him. With respect to the petitioner's absence from the courtroom, the transcript of the hearing merely notes that, after a "discussion t[ook] place off the record," petitioner was "removed from the courtroom." (Tr. at 63.) Mr. Valdivia then testified as the final witness. After his testimony and oral argument, Justice Figueroa ruled that neither petitioner's statement to the arresting officer nor Mr. Montoya's identification of petitioner as petitioner sat in a police car would be suppressed. As to Mr. Valdivia, the court said it was "really struck by the deliberateness with which Valdivia testified ... that he did indeed get a good look at the defendant" in his apartment. (At trial, Mr. Valdivia's recorded testimony in which he identified petitioner from a photo of petitioner shown to him in the hospital was read into evidence.) Justice Figueroa further ruled that, although there was an independent basis for Mr. Valdivia to identify petitioner based on his observations in his apartment, he would grant petitioner's motion to suppress his subsequent identification of petitioner at the "show-up" because it was "suggestive." (Tr. at 92.) Apparently petitioner remained absent after Mr. Valdivia began to testify and was thus not present for the closing arguments or the court's announcement of its decision.

Over seven weeks later, in a letter to Justice Fitzgerald on April 25, 1991, petitioner requested a "re-hearing" and also that new counsel be assigned. His letter began as follows:

I am writing this letter with regards to a WADE HEARING conducted on March 5, 1991. I was given a hearing when the Assistant District Attorney said she wanted to bring in the complaining witness, but my lawyer did not want me present. I thought that I'd be taken out for a minute or so but instead, I was never reproduced back into the courtroom.

At that time I never signed any papers or did I ever make any statements for the record and was not allowed to take part in the Wade Hearing. That night when I was returned to Rikers Island, I called my attorney, Mr. R. Siracusa, and he informed me that my hearing [sic] had been denied.

The defendant is appealing to you for a re-hearing to be held in front of the defendant's presence. The defendant does not feel that it's ethical for counsel to proceed without the defendant[']s consent.

Petitioner then attacked inconsistencies in statements by the two complainants and also criticized his attorney, suggesting some sort of collusion between him and the Assistant District Attorney at one point, and asking the court to "investigate this matter." He concluded by requesting "that the hearings be re-argued and that new counsel be assigned." Justice Fitzgerald denied the request for a rehearing without opinion.

In his letter petitioner appears to have taken the following positions: (1) the court should not have relied on his counsel's implicit or explicit representation that petitioner did not want to be present during the balance of the hearing after Mr. Valdivia's testimony; (2) the court should instead have obtained an explicit written or oral statement by petitioner that he did not want to be present; and (3) knowing that his attorney did not want him present during Mr. Valdi-

via's testimony, he agreed to be taken out of the courtroom but thought he would only be "out for a minute or so."[1]

In his appeal to the Appellate Division on this question, petitioner avoided any concession that he had agreed to be absent during the testimony of the final witness. He argued that the court should have obtained from him an "on the record" waiver of his right to be present and that, at least under New York law, any purported waiver of that right on his behalf by counsel was a "nullity" unless he subsequently "ratified" it. The Appellate Division rejected petitioner's arguments, focusing on whether it was appropriate to take Mr. Valdivia's testimony in petitioner's absence:

The trial court did not err in receiving testimony from one of the complainants at the *Wade* hearing in defendant's absence. A defendant's right to be present at a suppression hearing may be waived, expressly or impliedly, provided that the waiver is knowing and voluntary (*People v. Peterson*, 151 A.D.2d 512, 542 N.Y.S.2d 301). Here, although no explicit waiver appears in the record, the circumstances indicate that defendant's absence was knowing and voluntary. Defendant's removal followed a discussion among counsel and the hearing court, and was not protested. Moreover, defendant indicated in post-hearing *pro se* motion papers that he had consented to his removal, stating that his lawyer had not wanted him present during the complainant's testimony and that he only expected to be absent for a very short time.

*People v. Lynes,* 197 A.D.2d at 381, 602 N.Y.S.2d at 360.

In the petition now brought before us, petitioner states the following "supporting facts" for his claim that the court erred in receiving testimony at the *Wade/Huntley* hearing in his absence:

A defendant have due process rights to be present when testimony is given at pretrial

---

1. Petitioner does not state nor does it appear from any of his papers in the state courts where he was taken nor why he was not returned to the courtroom. Presumably he was taken back to Rikers Island. I assume from the absence of his stating otherwise that he never told the officers or anyone else that he wished to be returned to the courtroom nor protested at the time he was being returned to his cell.

hearing. Petitioner did not knowingly and intelligently waive his right to be present. Instead he was simply taken from the court room with understanding that he would be returned when the side-bar was completed.

In this formulation, petitioner again abandons any suggestion that he agreed to be absent during Mr. Valdivia's testimony and now states that his "understanding" was that he would be absent only during the "side-bar," by which he may intend to refer to the colloquy prior to his leaving the courtroom. Although he thereby avoids the inconsistency in his letter to Justice Fitzgerald between his acceptance of being absent during Mr. Valdivia's testimony, on the one hand, and his purported belief that he would be gone for only "a minute or so," on the other, his new formulation is even more implausible since there was no reason for petitioner to have been absent from the courtroom during a "side-bar" in the first place and, indeed, was apparently not absent at that time since the record notes it was after "discussion t[ook] place off the record" that petitioner was taken from the courtroom.

As respondent points out in his answer to the petition, there was an obvious strategic reason for petitioner to absent himself from the hearing at the time he did: his absence deprived Mr. Valdivia of an opportunity to view him and thereby to enhance his ability to identify petitioner at trial. Respondent also points out that, as we have already noted, petitioner's April 25, 1991 letter contained an admission that he agreed to be absent during Mr. Valdivia's testimony. In a "Traverse to Return" apparently in response to these arguments, petitioner has again revised his story:

> As petitioner's April 25, 1991 motion to the court made abundantly clear, his informed absence from the hearing was limited solely to that portion covering the complaining witness' testimony, and not for the remainder of the hearing. Respondent's efforts to attribute to petitioner a knowing and voluntary consent to his absence for the entire hearing is unpersuasive and should not be subscribed to by the Court.

Thus, he now admits what was clear in any event, that he chose to leave the courtroom during Mr. Valdivia's testimony.

First, it should be noted that petitioner's final formulation in his Traverse undermines his purported ground for habeas review, *viz.*, that the court erred in "receiving testimony" in his absence, now conceding that he knowingly and voluntarily removed himself from the hearing, for the entirety of Mr. Valdivia's testimony (and not only for "a minute or so" or merely for the "side-bar"). Insofar as it was consistent with his wishes, it could not have been an "error" for the court to have "received testimony" in his absence. Second, even if we now treat petitioner's claim as an objection to his absence from the hearing merely during the attorneys' concluding arguments and the court's rendering of its decision, the means put forward by petitioner to have avoided this result, that the court should have obtained from him an express oral or written waiver of his right to be present, almost certainly would not have changed what occurred. A typical waiver allocution would have advised petitioner of his right to be present at the hearing and made sure he was knowingly choosing to leave, but it would not have contained a question to petitioner as to whether he wished to return. It was clear Mr. Valdivia was to be the last witness and that petitioner was not going to testify or otherwise present evidence after that point. There is no reason petitioner could not have made clear to the court before he left any wish to return to the hearing after the final witness' testimony was concluded. Petitioner insists on the necessity for an express waiver without appreciating its irrelevance under these circumstances. Third, as a matter of federal constitutional law, there is no constitutional requirement that a waiver of the right to be present at a proceeding be recorded, *Polizzi v. United States,* 926 F.2d 1311, 1319 n. 12 (2d Cir.1991); *United States v. Rewald,* 889 F.2d 836, 854 (9th Cir.1989), *amended,* 902 F.2d 18 (9th Cir.), *cert. denied,* 498 U.S. 819, 111 S.Ct. 64, 112 L.Ed.2d 39 (1990); *see also United States v. Gagnon,* 470 U.S. 522, 529, 105 S.Ct. 1482, 1486, 84 L.Ed.2d 486 (1985), and a client's right to be present at a hearing or conference can be

**126**

waived by defense counsel in the client's presence. *See United States v. Doe,* 964 F.2d 157, 159 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 628, 121 L.Ed.2d 560 (1992); *Polizzi v. United States,* 926 F.2d at 1322–23; *United States v. Rewald,* 889 F.2d at 854; *United States v. Corcoran,* 855 F.Supp. 1359 (E.D.N.Y.1994). *See also* Fed.R.Crim.P. 43(b)(1); 3A Wright, *Federal Practice and Procedure: Criminal 2d* § 723 (1982 & 1994 Supp.). Petitioner here concedes that and blames his counsel for waiving his right to be present at the balance of the hearing. As petitioner voluntarily absented himself from the hearing at precisely that time and neither petitioner nor his counsel attempted to inform the court that he wanted to return for the concluding arguments, it was hardly unreasonable for the trial court and the Appellate Division to find that petitioner had knowingly and voluntarily waived his right to be present at the balance of the hearing. *See United States v. Rewald,* 889 F.2d at 854 (where defendant never informed the trial court that he wanted personally to be present at Classified Information Procedures Act hearings and his counsel never objected to his absence, it was appropriate to find that the defendant had waived any right to be present).

 But finally, and most important, petitioner has said nowhere in all of his papers, nor even intimated, what difference his presence after Mr. Valdivia's testimony would or *could* have made in the result of the hearing or his trial. He has had the transcript of what took place in his absence, yet fails to point out anything that would have been different if he were present. In *United States v. Toliver,* 541 F.2d 958, 964–65 (2d Cir.1976), a situation where, unlike here, a defendant's absence during trial *did* violate her constitutional right of confrontation and the defendant *was* able to specify differences her presence would have made in the proceedings, the Second Circuit nevertheless ap-

plied a harmless error analysis and denied relief. *See also United States v. Doe,* 964 F.2d at 159 ("Appellant does not claim that he would have added anything to the discussion or that he was otherwise prejudiced"); *United States v. Rewald,* 889 F.2d at 854 ("Rewald fails to identify any prejudice arising from his absence"). Under these circumstances, petitioner unequivocally fails to meet his burden in seeking a writ of habeas corpus.

### CONCLUSION

For all of the above reasons, I respectfully recommend that the petition be dismissed.[2]

Dated: New York, New York
November 1, 1994

---

**2.** Pending my study of the claims presented, I did not rule on an application for appointment of counsel petitioner has made. Finding, upon thorough examination of the petition, that it does not raise any complex factual or legal issues, I determined that appointment of counsel would not be likely to lead to a more just determination in this case and have proceeded accordingly to

render this Report and Recommendation. *See Cooper v. A. Sargenti Co.,* 877 F.2d 170 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986). *See also Frazier v. Wilkinson,* 842 F.2d 42, 46–47 (2d Cir.), *cert. denied,* 488 U.S. 842, 109 S.Ct. 114, 102 L.Ed.2d 88 (1988); *Buitrago v. Scully,* 705 F.Supp. 952, 957–58 (S.D.N.Y.1989).