101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Steven SMITH, Petitioner-Appellant,
v.
John P. KEANE, Respondent-Appellee.
 No. 95-2480.
 United States Court of Appeals,
Second Circuit.
 July 2, 1996.
 
 Mark Diamond, Brooklyn, NY, for Appellant.
 Johnnette Traill, Assistant District Attorney for Queens County, Kew Gardens, NY, for Appellee.
 Present: MINER, JACOBS, PARKER, Circuit Judges.
 UPON CONSIDERATION of this appeal from an order of the United States District Court for the Eastern District of New York, it is hereby
 ORDERED, ADJUDGED, AND DECREED that the order be and it hereby is AFFIRMED.
 This cause came on to be heard on the transcript of record and was submitted.
 Petitioner-appellant Steven Smith appeals from an order of the United States District Court for the Eastern District of New York (Weinstein, J.) denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.
 
 
 1
 Smith was found guilty in New York State Supreme Court, Queens County, after a jury trial, of fatally shooting Arthur Zampino in the presence of Richard Pagan, Ralph Nieves, and several of Zampino's family members. Pagan testified that, on the evening of June 22, 1983, while on the beach in Far Rockaway, he observed Smith sit down next to him on a bench. He noticed that Smith was carrying an object that appeared to be a fishing pole. Approximately 20 minutes later, a man, later identified as Zampino, began to walk in Smith's direction. As Zampino approached, Smith rose from the bench, shot Zampino, and fled. Pagan followed Smith to a vacant lot, where he observed a police officer apprehend Smith.
 
 
 2
 Several members of Zampino's family also testified at trial. They explained that they had gone to the beach with Zampino in the evening of June 22, 1983. At some point in the evening, they heard a gunshot and observed a man run past them carrying a shotgun. The family members each provided descriptions of this man that matched the description of Smith. Ralph Nieves also testified that he had observed Smith shoot Zampino.
 
 
 3
 Police officer Thomas Fennessy testified that he was on patrol on June 22nd when he heard a shotgun blast. As he approached the area where the blast had occurred, he observed Smith running with a sawed-off shotgun, and followed in pursuit. Without ever losing sight of Smith, Fennessy chased Smith into a vacant lot that was covered by waist-high grass. About midway through the lot, Smith stopped and held up his hands. Fennessy asked Smith what he had done with the gun, and Smith responded that he had dropped the gun and did not know where it was. The police recovered a sawed-off shotgun approximately 15 feet from where Smith was standing.
 
 
 4
 During the government's opening statement, the prosecutor referred to Smith's statement to Fennessy that he dropped the gun, even though this statement had been suppressed prior to trial. Defense counsel objected, but declined to request curative instructions or to move for a mistrial, although he did make such a motion later in the trial.
 
 
 5
 The jury found Smith guilty of murder and criminal possession of a weapon. On April 11, 1984, Smith moved to set aside the verdict. The court denied the motion and sentenced Smith to a minimum term of 25 years, with a maximum term of life imprisonment, for murder in the second degree, and to a concurrent term of a minimum of five years, with a maximum term of 15 years, for criminal possession of a weapon in the second degree.
 
 
 6
 In December of 1985, Smith appealed his conviction to the Appellate Division, claiming, inter alia, that the prosecutor had engaged in misconduct during the government's opening statement by referring to Smith's suppressed statement and by referring to a "prior incident" between Smith and Zampino without eliciting evidence of a prior incident during the course of the trial. On June 30, 1986, the Appellate Division affirmed Smith's judgment of conviction. People v. Smith, 504 N.Y.S.2d 463 (2d Dep't 1986). With respect to the prosecutor's reference to the suppressed statement, the court found that Smith's motion for a mistrial had been untimely and that, in any event, Smith had not been unduly prejudiced. Smith's application for leave to appeal was denied by the New York State Court of Appeals. People v. Smith, 68 N.Y.2d 773 (1986).
 
 
 7
 On December 13, 1994, Smith filed the instant § 2254 petition in district court, claiming, inter alia, that he had been denied due process by the prosecutor's alleged misconduct and by defense counsel's alleged ineffectiveness. Following a hearing on the petition, the district court rejected each of Smith's claims and granted Smith a certificate of probable cause to appeal to this Court.
 
 
 8
 On appeal, Smith repeats each claim that was rejected by the district court. First, he contends that the prosecutor's reference during the government's opening statement to the suppressed statement deprived him of a fair trial. We find this claim to be procedurally barred.
 
 
 9
 "When a state appellate court refuses to consider the merits of a petitioner's claims on account of his procedural failure to preserve his rights by objection at the time, then a federal court may not review those merits in a collateral habeas corpus proceeding," Rosenfeld v. Dunham, 820 F.2d 52, 54 (2d Cir.), cert. denied, 484 U.S. 968 (1987), absent a showing of cause for the failure and resulting prejudice, Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir.1990). In cases where the state court finds a claim to be both procedurally barred and without merit, "federal habeas review is precluded 'as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.' " Id. (quoting Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989)).
 
 
 10
 Smith raised on direct appeal his claim regarding the use of the suppressed statement, and the Appellate Division stated that the claim had not been preserved for appellate review because defense counsel failed to timely move for a mistrial or to request curative instructions. Smith, 504 N.Y.S.2d at 465. Because this was an adequate and independent finding of procedural default, Smith must show cause and resulting prejudice.
 
 
 11
 We believe that Smith is unable to show either cause for his default or any resulting prejudice. Since the alleged errors of Smith's trial counsel did not rise to the level of ineffective assistance of counsel, see infra, trial counsel's alleged ineffectiveness cannot constitute cause for Smith's procedural default, see Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir.1991). Moreover, Smith cannot show that he will be prejudiced if we do not reach the merits of his claim. The suppressed statement was mentioned only during the government's opening statement, and the trial court instructed the jury that the opening statement was not evidence. Furthermore, the evidence against Smith was so compelling that conviction was certain in the absence of the statement.
 
 
 12
 Smith next contends that he was denied a fair trial because the prosecutor referred to "a prior incident" between Zampino and Smith during the government's opening statements and then never elicited evidence of such a prior incident. We reject this contention.
 
 
 13
 Prosecutorial misconduct during an opening statement "is grounds for reversal only when the remarks caused substantial prejudice to the defendant." See id. at 424 (quotations omitted). The prosecutor's reference to a prior incident did not substantially prejudice Smith. At most, the prosecutor's statement conveyed to the jury the government's view as to Smith's possible motive. In light of the direct evidence establishing Smith's guilt, any proof of motive was unnecessary. Moreover, the government only referred to this prior incident during its opening statement and the jury was instructed that the opening statement was not evidence.
 
 
 14
 Smith contends that he received ineffective assistance of counsel because his trial counsel failed to object to the prosecutor's reference to the suppressed statement. We disagree. In order to prevail on an ineffective assistance claim, Smith must demonstrate that his attorney's conduct fell below an objective standard of reasonableness, Strickland v. Washington, 466 U.S. 668, 688 (1984), and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. In reviewing such a claim, "[w]e will not second-guess trial counsel's defense strategy simply because the chosen strategy has failed." United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir.1987). Trial counsel's conscious choice to decline to request a curative instruction or to move for a mistrial immediately after the prosecutor made the statement can be justified as a tactical decision. Moreover, in light of the powerful evidence against Smith, the prosecutor's statement could not have affected the outcome of the trial.
 
 
 15
 We have considered Smith's remaining claims, and we find them all to be without merit.