*435 OPINION OF THE COURT
Gabrielli, J.
Defendant stands convicted of the crime of robbery, first degree, arising out of an alleged hijacking of a truck containing a shipment of sweaters. The Appellate Division affirmed the conviction, without opinion (60 AD2d 894) and, for the reasons that follow we are required to reverse that order and direct that a new trial be held.
While defendant assigns several errors in urging a reversal, we address but two of them. The first, and crucial, error concerns an unauthorized communication by the court clerk to the jury during their deliberations on the guilt or innocence of the defendant. The jury began deliberations at 2:00 p.m. on the seventh day of trial. That same evening the jury was sequestered without having agreed upon a verdict. Deliberations continued the next day and, after lunch, two messages were sent by the jury to the Trial Judge. The first stated that the jury was deadlocked with seven jurors supporting a guilty verdict and five who supported a finding of not guilty. The second note was a complaint by one of the jurors that one of their number was refusing to participate in intelligent discussions of the case. At this point the court instructed the jurors that they should continue to deliberate with all jurors participating, and once again the jury retired to attempt to reach a verdict. Shortly after midnight the jury again informed the court that they were deadlocked, although upon this occasion 11 jurors felt the defendant was guilty. It does not appear that the court gave them any further or additional instructions, but because the jury had indicated a desire to get some sleep and resume deliberations in the morning, the jurors were again sequestered at 1:00 a.m. With commendable persistence they resumed further deliberations after breakfast; and, following another full day, the jury returned a guilty verdict during the late afternoon.
The alleged serious error for our review concerns advice and instruction given by the court clerk while the jurors were deliberating. Based on this episode and following the verdict, and upon being advised by members of the jury that the court clerk had indeed spoken with them in the absence of the court, the defendant moved to set aside the verdict, claiming improper conduct by a person in relation to the jury (CPL 330.30, subd 2) and requested an immediate hearing. This motion was based upon uncontroverted sworn affidavits made by two members of the jury to the effect that during their *436 deliberations, the court clerk entered the jury room and told the assembled jurors that the Judge had stated that a lot of time and money are invested in the case and they shoiild keep on deliberating.[1] Obviously, neither defendant nor his counsel knew of this and, most importantly, the jurors wéte not in a position to know whether the Judge had in fact sent the message (it appears uncontroverted that he had not), but they were unequivocal in stating that it had in fact been delivered,
Significantly, upon the motion to set aside the verdict, the District Attorney did not question the veracity of the affidavits, nor did he seek to show that the events had not in fact occurred as described. Instead he took the position that the sworn allegations, even if true, were not grounds for vacating the verdict. The court agreed and denied the motion without making any inquiry into the factual basis for the sworn statements of the jurors.
In every criminal proceeding, a defendant has an absolute right to be present, with counsel, "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge” (Snyder v Massachusetts, 291 US 97, 105-106; People ex rel. Bartlam v Murphy, 9 NY2d 550, 553; People v Tyler, 14 AD2d 609; NY Const, art I, § 6). This necessarily includes all proceedings had in impaneling the jury, receiving evidence, the summations of counsel, receiving the verdict (People v Mullen, 44 NY2d 1; Maurer v People, 43 NY 1), and of equal importance, all proceedings dealing with the court’s charge, admonishments and instructions to the jury, where the court is required to state the fundamental legal principles applicable to criminal cases generally, as well as the material legal principles applicable to a particular case and the application of the law to the facts (People v Mullen, supra; Maurer v People, supra; see, also, CPL 300.10).
Where the court’s instructions are supplemental, coming after the jury has already once retired, they may well be determinative of the outcome of the case, coming as they do in response to questions raised by the jurors themselves. As such, the presence of the defendant and his counsel is constitution *437 ally required whenever supplemental instructions are given, and failure to notify them is a fundamental error (US Const, 6th Arndt; NY Const, art I, § 6).
Nor has the problem escaped the notice of the Legislature, When the court communicates with a jury, they must be returned to the courtroom, the prosecutor and counsel for the defendant must be notified, and the defendant must be present (CPL 310.30; see, also, Rogers v United States, 422 US 35). The statutory requirements insure that the rights of the defendant will be safeguarded at this crucial step in a criminal proceeding.
In this case we do not, of course, intimate that the Trial Judge in fact instructed the court clerk to convey the fatal message to the jury; our assumption is quite the contrary. On the record before us we must assume that the clerk gave his Qvvn personal instructions to the jury in response to some misguided notion of what the important influences on their decision should be. This does not, however, make the communication any less an error, since court officers are specifically prohibited from communicating with jurors or permitting others to do so except when so authorized by the court or when performing purely administrative duties such as, for example, to inquire if the jury has reached a verdict (CPL 310.10).[2] Quite apart from this statutory prohibition, the Supreme Court has held that an ex parte statement or communication regarding the case made by a bailiff to the jurors during a recess, was reversible error (Parker v Gladden, 385 US 363).
Under ordinary circumstances a court, confronted with charges and allegations of an impropriety such as occurred in this case, should hold a hearing to inquire into the truth of the factual averments (CPL 330.40). In fact the District Attorney now belatedly asks that in the event we find the communication was error we should remand for a determination of whether it was actually given. This is, to say the least, an *438 interesting counterpoise to the position taken by the prosecutor when the motion to set aside the verdict was argued, at which time he contended vehemently that a hearing was unnecessary.
In his motion papers defense counsel alleged a legal basis for granting the requested relief (CPL 330.40, subd 2, par [d], cl [i]) and submitted uncontroverted sworn affidavits of two jurors containing all facts essential to support the grounds for setting aside the verdicts (CPL 330.40, subd 2, par [d], cl [ii]). The People did not dispute any of these facts, and although they have not expressly conceded them, they have impliedly done so by failing even to allege their untruthfulness (see People v Gruden, 42 NY2d 214, 216, where, in a case involving motions to dismiss, we held that "[njormally what is not disputed is deemed to be conceded”). Under these circumstances we hold that it is proper for a court to grant the defendant’s motion without the necessity of holding a hearing (People v Gruden, supra; see, also, Mares v United States, 383 F2d 805, 809, cert den 394 US 963). In the latter case the Tenth Circuit Court of Appeals was confronted with speculation that jurors might have been exposed to a highly prejudicial newspaper article during the trial. Although the trial court held no hearing to explore the truth of the speculation, the Court of Appeals ordered a new trial, holding that during the 11 months since the trial the jurors have separated and their memories have probably dimmed, and therefore no good purpose would be served by a hearing. We note that in the instant case over 28 months have elapsed since the trial.
Because of our disposition of this case we need not pass upon all the other alleged trial errors assigned by the defendant as grounds for reversal. One, however, merits our attention because of the possibility that it might recur upon a retrial. We hold that it was error for the court to receive certain so-called "expert” testimony.
The victim of the robbery testified at trial that two men had forced their way into his truck and instructed him to drive off. One of them allegedly offered him $100 provided he would not reveal what actually happened and, instead, when queried, to place the blame for the hijacking on two Blacks. Later, the victim testified that a hijacker also offered to buy him breakfast or lunch while the other drove off in the truck. A detective was called and testified on behalf of the People that he had been with the Safe and Loft Squad of the New York *439 City Police Department for 10 years and had investigated approximately 300 hijacking robberies. He then testified in response to a hypothetical question that it was not unusual for hijackers to offer to give the driver of the truck $100 for his co-operation in reporting to the police that two Blacks had done the robbery and that it is usual for hijackers to take their victim, while in "custody”, out to lunch.
This "opinion” evidence was the precise equivalent of affirming the credibility of the People’s witness through the vehicle of an opinion that many hijackings occur as the victim had related. It is always within the sole province of the jury to decide whether the testimony of any witness is truthful or not. The jurors were fully capable of using their ordinary experience to test the credibility of the victim-witness; and the receipt of the detective’s testimony in this regard was improper and indeed constituted usurpation of the function of the jury (People v Barber, 115 NY 475, 492; see, also, Fisch, Evidence, § 413). Where, as here, the sole reason for questioning the "expert” witness is to bolster the testimony of another witness (here the victim) by explaining that his version of the events is more believable than the defendant’s, the "expert’s” testimony is equivalent to an opinion that the defendant is guilty, and the receipt of such testimony may not be condoned (People v Williams, 6 NY2d 18, 23; People v Higgins, 5 NY2d 607, 627-628; People v Gradon, 43 AD2d 842, 843).
Accordingly, the order of the Appellate Division should be reversed, the conviction vacated and set aside, and a new trial ordered.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Fuchsberg concur with Judge Gabriblli.
Order reversed, etc.

. The actual text of what the court clerk told the jury, as recited by two of the jurors in their affidavits is as follows: One affirmed that "the Judge said that a lot of time and money was invested in this cáse and he wants them to keep deliberating”; the other juror affirmed that "the Judge feels that a lot of time and money was involved in this case and we should keep deliberating”.

. CPL 310.10 provides that: "Following the court’s charge, the jury must retire to deliberate upon its verdict in a place outside the courtroom. It must be providéd with suitable accommodations therefor and must be continuously kept together under the supervision of a court officer or court officers. In the event such court officer or court officers are not available, the jury shall be under the supervision of am appropriate public servant or public servants. Except when so authorized by the court or when performing administerial duties with respect to the jurors, such court officers or public servants, as the case may be, may not speak to or communicate with them or permit any other person to do so.” (Emphasis supplied.)