OPINION OF THE COURT
Lawrence J. Finnegan, J.
This is a motion by the defendant, William Brownridge, for summary suppression of statements and identification testimony.
A brief chronology of the relevant events and motion practice is as follows:
May 4, 1983. The defendant is arraigned on the instant felony complaint.
May 18,1983. Charges are reduced to misdemeanors. At the request of defendant the following motion schedule was adopted.
Motions by May 25, 1983.
District Attorney’s response by June 1, 1983.
Court’s decision by June 9, 1983.
*1029 May 26,1983. The defendant’s omnibus motion is served on the court.
June 9, 1983. Court renders its decision on the defendant’s motion without response by the People and orders a Wade-Huntley-type hearing.
The People serve a response to the defendant’s request for a bill of particulars and demand for discovery dated June 2, 1983. The defendant serves the instant motion for summary suppression.
June 13, 1983. The People serve their response to the instant motion.
The above scenario is notable, not because it represents the exception, but rather a sequence slightly superior to the standard set by daily motion practice as displayed in the criminal courts.
Many times, on a daily basis, the court prepares motion schedules which are rarely, if ever, observed. The result is that the court signs dozens of orders on pretrial motions without the benefit of a response by the People, and with little more than a clue as to what issues, if any, are presented therein. This court has ignored the relevant statutes within the Criminal Procedure Law in the interests of due process, and to avoid the threatened gridlock that hangs like a sword over the court’s head.
This state of motion practice reached new depths during the recent strike by the Legal Aid Society when the courts were swamped with pages and pages of Xeroxed and word-processed boiler plate motions requesting all forms of relief whether relevant, comical or truly frivolous. Surely there was one prostitute or turnstile jumper in the country who was not detected through the use of hypnosis or electronic surveillance equipment. Yet motions to suppress such evidence brazenly wheedled their way into the motion papers of assigned counsel regardless of how inappropriate they may have been. One might wonder whether some members of the 18-B panel were being paid by the hour or by the pound for motions prepared.
The District Attorney’s response to all of this was not to respond at all. A practice which the People have found so effective that it has been continued beyond the settlement *1030 of the Legal Aid strike and now is almost universally employed even when faced with routine and statutorily requested discovery.
Into this morass appears the occasional motion for preclusion and the newest variety, the motion for summary suppression, the instant motion. The court notes that the former, initially viewed with approval, lost all credibility when it was abused by overanxious defense counsel who routinely served them, either at the same time as the original motions, or long before the People’s response was due. The latter is viewed not with anticipation, but as an opportunity for the court to put a halt to this slow strangulation of the standards listed within the Criminal Procedure Law.
THE LAW
Motions to suppress and the procedure by which they are brought are controlled by CPL article 710. This article mandates that prior to trial these motions must be made in writing, and that the legal grounds for such motions be supported by factual allegations contained within sworn affidavits. The People are then afforded an opportunity to respond to these motions. CPL 710.60 (subd 1) states in pertinent part “The people may file with the court * * * an answer denying or admitting any or all of the allegations of the moving papers”, and if on the basis of those papers, the court is unable to decide the motion, a hearing must be conducted. In all other situations, the court must summarily grant or deny the motion (see CPL 710.60, subd 2, pars [a], [b]).
In recent years, appellate courts have interpreted these and other very similar statutes while setting the minimum standards of acceptable motion practice in criminal cases.
In the companion cases of People v Gruden and People v Frazier (42 NY2d 214), the Court of Appeals first attempted to restore order to the havoc created by the procedural shortcuts adopted in Westchester County. In those cases, the court was presented with motions to dismiss pursuant to CPL 30.30 and 210.45, and the People submitted no response, nor did they dispute the allegations contained within the defendants’ moving papers. Instead, as *1031 was customary in the county at that time, they merely consented to a hearing.
Moreover, the court made note that the statutory procedure which it was interpreting was not peculiar to motions to dismiss. As the court stated (supra, p 216): “The same standard applies in those sections dealing with motions to suppress (CPL 710.60, subd 2, par [b]), motions to set aside a verdict (CPL 330.40, subd 2, par [d]) and motions to vacate a judgment or set aside a sentence (CPL 440.30, subd 3, par [c]). In short it is the standard procedure to be followed in connection with nearly every pretrial and post-trial motion made in a criminal action.”
The Court of Appeals also determined the legislative intent of the statutes which controlled criminal motion practice, and specifically rejected a literal interpretation of these sections and the apparent permissive nature of the People’s duty to respond to defense motions. The court stated (supra, p 216): “ ‘[Ljiteral interpretation of the statutory language could have a catastrophic effect on motion practice in all criminal cases. The court’s power to grant motions on the papers will be virtually abolished. Even though the facts alleged warrant the relief sought * * * the court must hold a hearing before granting the motion if the prosecutor decides that he will not expressly concede the facts alleged. No statute should be interpreted that literally.”
Finally, the court adopted a policy for deciding on similar cases, and by so doing provided guidance for lower courts. The court stated (supra, p 216): “Normally what is not disputed is deemed to be conceded. Generally a party opposing a motion cannot arbitrarily demand a hearing to conduct a fishing expedition. The courts should not assume that the Legislature intended to establish such a useless and wasteful procedure.”
In People v Ciaccio (47 NY2d 431), the Court of Appeals was again presented with the dilemma of a District Attorney failing to respond to a motion (to set aside a verdict pursuant to CPL 330.40); the court concluded that although the People had not expressly conceded the truth of the defendant’s factual allegations, their failure to even controvert the allegations must be viewed as an implied *1032 concession, and summarily granted the motion without a hearing.
More recently, in People v Weaver (49 NY2d 1012), the Court of Appeals supplied further guidance for the application of summary relief by outlining the minimum requirements that each side must observe to avoid the application of the summary relief sections pursuant to CPL 710.60 (subds 2, 3). The scant burden placed on the People for the purpose of this' section is to deny the allegations made by the defendant in his affidavit, or to refuse to concede the truth of the alleged facts. Clearly, the People’s standing silent does not, and will not, meet this minimal burden.
Similarly in civil practice, the term “law office failure” was developed to label tardy and unresponsive motion practice by plaintiffs’ and defendants’ attorneys. The Court of Appeals exhibited little more patience for these transgressions by civil law practitioners than it did for similar failures by District Attorneys’ offices in Gruden (supra) and Ciaccio (supra; see Barasch v Micucci, 49 NY2d 594; Eaton v Equitable Life Assur. Soc., 56 NY2d 900). While the Legislature through the enactment of CPLR 2005 has endeavored to permit the court’s discretion to intrude upon the strict application of summary dismissals and defaults for law office failures no greater than the tardy filing of a complaint (see Getlin v St. Vincent’s Hosp. & Med. Center, 90 AD2d 495), the instant legislation should not be interpreted as being reflective of a more permissive attitude by appellate courts, when faced with examples of untimely practice.
Also of note, when comparing the rules of civil motion practice, is the long-standing mandate that those allegations which are not specifically denied are deemed to be admitted (CPLR 3018, subd [a]). Obviously, this rule is in complete accord with the spirit, if not the letter, of Gruden (supra), Ciaccio (supra), and Weaver (supra).
At this juncture, the court takes the opportunity to suggest that the Legislature may be well advised to reconsider the permissive nature of the language it employs in defining the People’s burden as to pre and posttrial motions within the Criminal Procedure Law. In light of the Court of Appeals interpretation of this language in Gruden *1033 (supra) and its progeny, the Legislature should consider devising a statute similar to CPLR 3018 (subd [a]), and thereby articulate a general principle that “that which is not expressly denied is deemed admitted” with respect to criminal motion practice.
As to the case at bar, the court is faced with just one example of what has developed into a long-standing and apparently intentional practice of systematic “law office failure” on the part of the People. The waste generated by this practice is painfully obvious in the instant case. The court, in the absence of any relevant response by the People, ordered a Wade-type hearing to examine the constitutionality of the alleged identification. However, the People’s tardy response stated: “There is no Wade issue as the complainants in this action have known the defendants for a substantial period of time.” Had the court been in possession of this response, said hearing which “consume[s] substantial amounts of time and contribute^] to the delays in processing criminal cases” (People v Ganci, 27 NY2d 418, 426) quite possibly would not have been ordered.
Therefore, in response to all of the foregoing and in an attempt to terminate the chaos caused by the deplorable state of motion practice, the court announces the following rules for this part (3A):
(1) Motion schedules are available and indeed encouraged if defense counsel elects to serve written pretrial motions. Said schedules are to be strictly observed by both sides.
(2) No written motion will be decided without a written response by the People.
(3) Where timely motions are served and the People fail to respond on the scheduled date, the court will adjourn the case and charge all delay occasioned by such failure to the People pursuant to CPL 30.30.
(4) If after having adjourned the case once for their response, the People again fail to timely respond, without reasonable explanation, the court will consider a defendant’s motion for summary suppression. The court will decide said motion in accordance with the existing case law, and will grant the requested relief to the fullest extent permitted by those cases.
*1034 These rules will take effect immediately and will apply prospectively for all cases on which motion schedules have not yet been adopted.
Now, in turning to the instant case, the court elects to employ the solution adopted in Gruden (supra) and decides the subject motion not summarily, but on its merits. I am of the view that in light of the foregoing practice established within this county, the People should be permitted the same opportunity and notification they were afforded by the Gruden court.
Accordingly, the motion for summary suppression is denied. However, the previously ordered hearings will be conducted on the earliest date convenient to the court.