■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR GARCIA, Appellant. [601 NYS2d 482] —Judgment, Supreme Court, Bronx County (Ira R. Globerman, J.), rendered October 10, 1991, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and sentencing him to a term of 6 to 12 years, affirmed.

The undercover officer, qualified as an expert, was properly allowed to give expert testimony to explain the methodology of street drug sales (People v Diaz, 181 AD2d 595, lv denied 79 NY2d 1048). As the trial court specifically found, "[T]here are aspects of the conduct that are alleged to have occurred here that would raise problems to a lay person that could, conceivably, be explained by an expert, and so it seems to me the testimony is relevant here". Thus, the jury was allowed to hear expert testimony regarding the functions of a "money man", a "stash man" and a "hand-to-hand" man. Absent an abuse of discretion, a trial court's determination as to the admissibility and bounds of expert testimony will not be disturbed (People v Mason, 162 AD2d 144, lv denied 76 NY2d 860). The testimony was appropriately brief and limited (see, People v Gonzalez, 180 AD2d 553, lv denied 79 NY2d 1001). Whenever the prosecutor's questions went beyond the mere definition of terms, the trial court sustained defense counsel's objections.

Most of the defendant's claims concerning the prosecutor's summation are not properly preserved for appellate review, and all are without merit. Concur—Sullivan, Kupferman and Rubin, JJ.

Murphy, P. J., and Carro, J., dissent in a memorandum by Carro, J., as follows: The defendant-appellant Victor Garcia, and his codefendant Carlos Lopez, were charged with having sold two glassine envelopes of heroin, for $20, to an undercover police officer who was part of a "buy and bust" operation at 166th Street and Walton Avenue in the Bronx. According to the People's witnesses, on August 8, 1990 Detective Michael Perrin observed Lopez calling out "Blue Thunder," a brand name for heroin. Detective Perrin asked for two, and Lopez told Garcia to get them. Garcia then proceeded to a nearby building and retrieved two glassines of heroin from a

crack in the wall. Detective Perrin exchanged the money for the glassines with the defendant. Returning to his car, Detective Perrin radioed a description of Garcia and Lopez to the back-up team, during which time Detective Gary McDonald, who had witnessed the transaction acting as the operation's "ghost," observed Garcia apparently handing the money to a third man, Oscar Melendez. All three were arrested, but Melendez was not indicted.

At trial, Detective McDonald testified both as an eyewitness and as an expert on street level narcotics transactions. As an expert, McDonald testified, over strenuous objections, to his familiarity with how typical street level drug selling operations function, explaining the "hawker"—"the advertising branch of the particular dealers," the "hand-to-hand" person —the individual who physically delivers the drugs, and the "money man"—the recipient of the money. The defense produced two eyewitnesses who directly disputed the officers' testimony that a drug transaction had taken place, and the circumstances of the arrest. In summation, the prosecutor highlighted Detective McDonald's testimony, arguing that the two defendants and Melendez played the roles defined by McDonald as typical of street drug sale operations, "much like a store where each employee has a job to do. They run a business and that business is selling heroin."

Appellant Garcia argues that improper bolstering occurred when Detective McDonald was permitted to testify both as an eyewitness and as an expert, that the admission of expert testimony on the typical structure of street drug transactions was superfluous, prejudicial and improper, and resulted in the defendant's not receiving a fair trial. I agree.

Expert testimony is admissible where the conclusions to be drawn from facts depend upon professional or scientific knowledge or skill beyond the range of ordinary training or intelligence (People v Cronin, 60 NY2d 430, 432), or "when it would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror" (De Long v County of Erie, 60 NY2d 296, 307). It is erroneously admitted when it serves the "sole purpose of bolstering the testimony of another witness" (People v Major, 154 AD2d 225, 226, lv denied 75 NY2d 815).

Here, the majority, in a classic ipse dixit, asserts that expert testimony was admissible because there were " 'aspects' " of the conduct alleged against the defendants " 'that would raise problems to a lay person that could, conceivably, be explained

by an expert.' " What it is that is so esoteric about one person hawking drugs while a confederate delivers the drugs and receives money from the buyer, that requires an expert to unravel, is left unexplained by the majority. Surely such a simple scenario is fully familiar to any lay person who has observed the street sale of merchandise of all sorts. *People v Diaz* (181 AD2d 595, *lv denied* 79 NY2d 1048), upon which the majority relies, held that expert testimony was admissible to explain the use of beepers and the means of record-keeping by street dealers of drugs—obviously matters as to which an expert would have knowledge, but a typical juror would not.

In *People v Ciaccio* (47 NY2d 431), a case strongly parallel-ing the one at bar, expert testimony was offered by the People on what constituted a common hijacking scenario, against a defendant accused of a truck hijacking. The Court of Appeals unanimously concluded, through reasoning particularly apro-pos to the instant appeal: "This 'opinion' evidence was the precise equivalent of affirming the credibility of the People's witness through the vehicle of an opinion that many hijack-ings occur as the victim had related. It is always within the sole province of the jury to decide whether the testimony of any witness is truthful or not. The jurors were fully capable of using their ordinary experience to test the credibility of the victim-witness; and the receipt of the detective's testimony in this regard was improper and indeed constituted usurpation of the function of the jury *(People v Barber,* 115 NY 475, 492; see, also, Fisch, Evidence, § 413). Where, as here, the sole reason for questioning the 'expert' witness is to bolster the testimony of another witness (here the victim) by explaining that his version of the events is more believable than the defendant's, the 'expert's' testimony is equivalent to an opin-ion that the defendant is guilty, and the receipt of such testimony may not be condoned *(People v Williams,* 6 NY2d 18, 23; *People v Higgins,* 5 NY2d 607, 627-628; *People v Gradon,* 43 AD2d 842, 843)." *(Supra,* at 439.)*

I believe that *Ciaccio* is dispositive of the case at bar. Here, we have a parallel circumstance where Detective McDonald testified that it was the practice of street drug operations to be conducted exactly as it was testified the defendants conducted theirs. Additionally, and fatal in my view in combination with this, Detective McDonald wore two hats in this proceeding,

---

* These principles were recently reaffirmed by the Court of Appeals in *People v Bennett* (79 NY2d 464, 473 [1992]): "In such instances, the potential value of the evidence is outweighed by the possibility of undue prejudice to the defendant or interference with the province of the jury."

testifying as both eyewitness and expert, thus improperly bolstering his own credibility through the mantle of street sagacity and expertise.

In this case the defense presented two eyewitnesses who gave sworn testimony exculpating the defendants, while the People's case rested upon the sworn testimony of two police officers. It was the jury's central function to determine the credibility of the materially conflicting accounts, and properly they were to do so based upon testimony of what occurred unenhanced by testimony of the routine practices of drug operations or by eyewitnesses whose testimony was unnecessarily clothed in the authority of expertise. The Court of Appeals has held that "receipt of such testimony may not be condoned" *(People v Ciaccio,* 47 NY2d, *supra,* at 439). Accordingly, I would reverse and remand for a new trial.

