**Felix COLON, Jr., Petitioner,**

v.

**Sally JOHNSON, Superintendent of Orleans Correctional Facility, Respondent.**

**No. 96 Civ. 2175(LAK)(SEG).**

United States District Court, S.D. New York.

July 28, 1998.

the essential functions of his position either with or without reasonable accommodation.

Anastasios Sarikas, Astoria, NY, for Felix Colon, Jr.

Nancy Killian, Asst. Dist. Atty., Bronx, NY, for Sally Johnson.

## ORDER

KAPLAN, District Judge.

The petition is dismissed without prejudice for failure to exhaust state remedies for the reasons set forth in the report and recommendation of Magistrate Judge Sharon Grubin to which no objection has been filed.

SO ORDERED.

### REPORT AND RECOMMENDATION TO THE HONORABLE LEWIS A. KAPLAN

GRUBIN, United States Magistrate Judge.

Petitioner, represented by counsel, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment rendered on December 14, 1984 in the New York State Supreme Court, Bronx County, convicting him upon a jury verdict of criminal sale of a controlled substance in the first degree and criminal sale of a controlled substance in the second degree. The instant petition challenges the convictions on two grounds: (1) that the trial court's decision to allow portions of the trial transcript into the jury room during deliberations deprived petitioner of "his right to due process of law, equal protection of the law and a fair trial" and (2) that the trial court's admission into evidence

of testimony of an uncharged crime committed by petitioner's wife (the sale of heroin) deprived petitioner of due process of law. As discussed below, I recommend that the petition be dismissed without prejudice as neither claim has been exhausted in the New York State courts.

## FACTUAL BACKGROUND

Viewing the facts in a light favorable to the state, *see, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Reddy v. Coombe,* 846 F.2d 866, 869 (2d Cir.), *cert. denied,* 488 U.S. 929, 109 S.Ct. 316, 102 L.Ed.2d 334 (1988); *Garcia v. Warden,* 795 F.2d 5, 6 (2d Cir.1986), the evidence established that petitioner and a codefendant, with whom he was jointly tried, sold cocaine and heroin to an undercover police officer on two occasions. Only those facts relevant to the determination herein from the 1,300–page trial transcript ("Tr.") will be set forth below.

As a result of information the police received from a confidential informant ("CI") indicating that narcotics were being sold by petitioner out of his residence at 282 Brook Avenue in the Bronx, an investigation by the Bronx Narcotics Squad was commenced. On May 25, 1983 Detective Charles Serrano acting in an undercover capacity was taken to petitioner's apartment by the CI. They were met at the door by petitioner's wife who stated that petitioner was sleeping. Serrano told her he wanted two bundles of heroin, and she negotiated the purchase with him. Directed by her to wait in the hallway, Serrano was then approached by a person called "Soaky" whom he paid in exchange for the heroin as petitioner's wife looked on. Serrano told her that if the heroin were good, he would be back. A week or two later, petitioner's wife introduced Serrano to petitioner, and during the following month Serrano met numerous times with petitioner in the apartment to discuss the purchase of narcotics. Serrano, known to petitioner and his wife as Nicky, purportedly ran a narcotics operation in Connecticut and was trying to find a good supplier. Tr. 676–77, 681, 940–51.

Serrano testified at length about purchases of narcotics he made on June 29, 1983 and August 13, 1983 from petitioner. On both occasions, as pre-arranged with petitioner, Serrano met him at his apartment. Each time they thereafter drove off in Serrano's car to another location where they met codefendant DeJesus, and petitioner and DeJesus supplied Serrano with the drugs in exchange for the purchase price. Serrano's testimony about the events on the day of each purchase was quite detailed and specific. In addition, four other officers of the Bronx Narcotics Squad, who had followed Serrano and surveilled his and petitioner's movements on the days of the sales from the time he entered petitioner's apartment building until he returned to the office of the Bronx Narcotics Squad and the narcotics were placed in a sealed envelope, also testified. They identified petitioner at trial as the person who had accompanied Serrano throughout the events to which he testified, and their testimony corroborated Serrano's detailed description of events. *Id.* 59–76, 190–212, 218, 227–38, 379–428, 524.

## PROCEDURAL BACKGROUND

On appeal of his convictions to the Appellate Division, petitioner argued four points, only two of which are raised in the petition herein. The first was that the trial court erred in allowing the testimony about the May 25, 1983 sale of heroin to Serrano by petitioner's wife. Petitioner's second and third grounds on appeal, which are not raised in the instant petition, claimed error of the trial court in, respectively, failing to instruct the jury on the defense of agency and ruling incorrectly on the defense of entrapment. His final ground argued error in the trial court's having provided the jurors with the transcript of Serrano's testimony to take into the jury room during its deliberations. The Appellate Division affirmed the judgment of conviction in an opinion issued November 2, 1989. *People v. Colon,* 151 A.D.2d 146, 547 N.Y.S.2d 11. The New York State Court of Appeals denied petitioner's application for leave to appeal the Appellate Division's affirmance on March 28, 1990, *People v. Colon,* 75 N.Y.2d 917, 555 N.Y.S.2d 36, 554 N.E.2d 73, and a petition for a writ of *certiorari* peti-

tioner sought from the United States Supreme Court was denied on May 17, 1993. *Colon v. New York*, 508 U.S. 923, 113 S.Ct. 2376, 124 L.Ed.2d 281. The instant petition was filed on March 26, 1996.[1]

### DISCUSSION

The federal habeas corpus statute, 28 U.S.C. § 2254, requires a person in state custody to exhaust his or her state remedies before seeking federal habeas corpus review. This rule is based on considerations of comity between the federal and state courts, ensuring that the state courts have an opportunity to consider and correct any violations of their own prisoners' federal constitutional rights. *See, e.g., Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995); *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 191 (2d Cir.1982) (en banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984); *Mercado v. Henderson*, 733 F.Supp. 19, 21 (S.D.N.Y.1990); *Castillo v. Sullivan*, 721 F.Supp. 592, 593 (S.D.N.Y. 1989). Exhaustion requires a petitioner to have presented to each level of the state courts the same federal constitutional claims, legally and factually, as he raises in his petition to the federal court so that the state courts will have been alerted to them and have had the initial opportunity to pass on them. *Duncan v. Henry*, 513 U.S. at 365–66, 115 S.Ct. 887; *Picard v. Connor*, 404 U.S. at 275–76, 92 S.Ct. 509; *Daye v. Attorney General*, 696 F.2d at 191. *See also Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam); *McGann v. New York*, 870 F.2d 908, 910 (2d Cir.1989); *Morgan v. Jackson*, 869 F.2d 682, 684 (2d Cir.), *cert. denied*, 493 U.S. 920, 110 S.Ct. 284, 107 L.Ed.2d 264 (1989); *Brown v. Mil-*

*ler*, No. 97 Civ. 1874(SS), 1998 WL 91081, at *2 (S.D.N.Y. March 3, 1998). As the Supreme Court stated in *Duncan v. Henry*:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

513 U.S. at 365–366, 115 S.Ct. 887. In *Petrucelli v. Coombe*, 735 F.2d 684 (2d Cir. 1984), the Second Circuit Court of Appeals explained:

> Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982), a habeas petition[er] must put state courts on notice that they are to decide federal constitutional claims. *See, e.g., Daye*, 696 F.2d at 192. It is not necessary for a habeas petitioner to cite "book and verse" of the Constitution, *id.* (quoting *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)), but adequate notice to the state courts that they are to decide federal constitutional claims at least includes:

> > (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

---

1. Respondent argues that the petition should be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1). The AEDPA became effective April 24, 1996 and amended 28 U.S.C. § 2244 to impose a one-year statute of limitations on all habeas corpus petitions brought under 28 U.S.C. § 2254. However, respondent is mistaken because the one-year statute of limitations does not apply to petitions filed before the effective date of the act, *Reyes v. Keane*, 90 F.3d 676, 679 (2d Cir.1996), nor indeed, as quite recently held by the Second Circuit, does it bar a petition filed on or before April 24, 1997. *Ross v. Artuz*, 150 F.3d 97, 1998 U.S.App. LEXIS 14918 (2d Cir.1998).

735 F.2d at 687–88 (quoting *Daye v. Attorney General*, 696 F.2d at 194). *See also Waterhouse v. Rodriguez*, 848 F.2d 375, 381 (2d Cir.1988); *Grady v. LeFevre*, 846 F.2d 862, 864 (2d Cir.1988); *Holland v. Scully*, 797 F.2d 57, 64–65 (2d Cir.), *cert. denied*, 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986); *Mercado v. Henderson*, 733 F.Supp. at 21.

I should note that the Supreme Court's opinion in *Duncan v. Henry*, decided three years ago (see discussion *infra*, pp. 15–16), could be seen to require a petitioner to have mentioned explicitly to the state courts the federal constitutional claims he raises in a subsequent federal petition or at least have presented claims to the state courts that are "virtually identical" and not simply "somewhat similar" to those in his petition. 513 U.S. at 366, 115 S.Ct. 887. If so, it would narrow the leeway given a petitioner by *Daye v. Attorney General* and its progeny as to what is required for exhaustion purposes. The Second Circuit to my knowledge has not yet had occasion to consider its prior authority in light of *Duncan*, but, because petitioner has clearly failed even to meet remotely the standards of *Daye*, we need not address the question.

*Ground One*

During deliberations, the jurors sent a note requesting certain testimony of Serrano. When they were brought into the courtroom, the court, explaining that there were 500 pages of Serrano's testimony, told them:

> We have made some efforts to go through the transcript and find those portions in order to expedite your deliberations rather than just say officer, bring this up to the jury and leave you on your own merits. But we can make this available to you if you feel that you need it. So that we are going to try and accomplish what we want to by having the reporter read back those portions. And, again, the conference—withdrawn—the conversation that takes place between Serrano and [petitioner] is broken up in the dialogue. He testifies to certain things, then he leaves the car, if

you recall, et cetera. So we will jump if we can and try and accommodate you without going through everything.

Tr. 1245–46. After the readback the jury foreman stated it had been sufficient. The court stated:

> If you have any further questions and if you want the entire transcript, I'll give it to you. My concern, as I said, is that it's 500 pages and that if you are going to read through the whole transcript, which is your absolute right, it's going to take some time. But if you think you need the transcript to help you continue with your deliberations, by all means ask for it and we will make it available to you.

*Id.* 1263–64. The jury resumed deliberations and subsequently requested the entire testimony of Serrano. The court responded:

> That I will make available to you. Should you want the testimony of any other witness who testified at trial, you will have to send us a note. The reporter will have to locate his minutes and read to you from his minutes which only he can read because they are in shorthand in that machine. But we do have the transcript of Serrano, if that's what that request is. It will be given to you.

*Id.* 1266. Counsel and the judge then examined the transcript and agreed on colloquy and other not relevant material to be removed. The redacted pages were then submitted to the jury with an explanation of the nature of the redactions. *Id.* 1268–1273. No objection to the procedure or the court's remarks was made. Except with respect to one other request from the jury unrelated to this issue, nothing further was said to the jury before it reached its verdict.

In his brief on appeal to the Appellate Division petitioner argued it had been error to provide the transcript to the jurors under N.Y.Crim.Proc.L. § 310 because thereunder information requested by a jury is to be given to it in court and in the presence of the defendant.[2] Petitioner argued that the de-

---

2. Section 310.20 permits a court to provide a jury with any exhibits and a verdict sheet. Section 310.30 provides:

At any time during its deliberations, the jury may request the court for further instructions or information with respect to the law, with respect

fendant's absence during proceedings concerning the submission of the transcript mandated reversal under Section 310.30 [3] and also appears to have argued that submission of the transcript was error because of the danger that the jury could place undue weight on that portion of the trial testimony. Nowhere in his argument was there any reference whatsoever to the Constitution, any other federal law, nor even one mention of any catch-all phrase such as "due process" or "fair trial." His argument relied principally on *People v. Mehmedi,* 69 N.Y.2d 759, 513 N.Y.S.2d 100, 505 N.E.2d 610 (1987), where the trial court in response to a request for instructions had given the jury a note framed by the court with counsel but in the defendant's absence. The Court of Appeals affirmed the reversal of the conviction on the basis of § 310.30.[4] Petitioner also cited nine other cases in his Appellate Division brief. Except for one of them, *People v. Ciaccio,* 47 N.Y.2d 431, 418 N.Y.S.2d 371, 391 N.E.2d 1347 (1979), neither *Mehmedi* or any of the other cases even makes reference to the Constitution.[5] All of them rely on Crim. Proc.L. § 310.30 and other New York statutory law.

█ Likewise, the state in its Appellate Division brief made no reference whatsoever to the Constitution or other federal law. The authorities on which it relied were much of those petitioner had cited, and additional cases were also devoid of constitutional or other federal reference. The issue thus having been framed under New York State law, it is not surprising that it was under that law that the Appellate Division analyzed the issue and reached its decision.[6] The Appellate Division's opinion only confirms that it was not alerted that it was being asked to decide issues of federal constitutional law. Indeed, it was *not* being asked to decide any such issue.

In stark contrast to his Appellate Division brief, petitioner argues here that he was "deprived of his right to due process, equal protection and a fair trial" by the court's having provided the transcript to the jury. His petition relies only on federal cases (and one New York State case that employs constitutional analysis). He argues for the first time that cautionary instructions should have been given to the jury, and, at the least, the court should have inquired as to what information in Serrano's testimony the jury wished to see. In a separate section of his brief, he also argues violation of the equal protection clauses of the New York State and United States Constitutions because "*No other defendant, indeed no other citizen of the State of New York,* has ever been subjected to such a disparity in treatment," referring to submission of the transcript to the jury and

---

to the content or substance of any trial evidence, or with respect to any other matter pertinent to the jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper. With the consent of the parties and upon the request of the jury for further instruction with respect to a statute, the court may also give to the jury copies of the text of any statute which, in its discretion, the court deems proper.

3. It should be noted that petitioner *was* present when the jury was given the transcript. Apparently, he was not present when counsel and the court worked on the redactions.

4. The court did so despite defense counsel's failure to have objected to Mehmedi's absence from the courtroom.

5. In *Ciaccio,* the court clerk had entered the jury room during deliberations and made an unautho-

rized communication, telling the jurors something the judge had purportedly said. The defendant, counsel and the court were unaware of this event. The Court of Appeals, in reversing the conviction, mentioned in one sentence that the presence of the defendant and his counsel whenever supplemental instructions are given is "constitutionally required," (citing "U.S. Const., 6th Amdt., N.Y. Const., art I, § 6)." 47 N.Y. at 436–37, 418 N.Y.S.2d at 373. The court then noted as well the requirement under § 310.30.

6. Indeed, only a single case in the somewhat lengthy Appellate Division opinion cites the Constitution and does so without discussion. (*People v. Tyler,* 14 A.D.2d 609, 610, 221 N.Y.S.2d 804 (3d Dep't 1961) (citing Fourteenth Amendment and New York State Constitution where, in absence of defendant and without recalling jury to the courtroom, court had instructed clerk to read to himself testimony requested by the jury and then paraphrase it to a court attendant who in turn relayed it to the jury)).

the language of N.Y.Crim.Proc. L. §§ 310.20 and 310.30 as purportedly limiting the discretion of a court to do so. Memorandum of Law in Support of Petition at 23–24 (emphasis in original).

> As stated in *Mercado v. Henderson,*
>
> Interestingly, in arguing his claim herein petitioner urges constitutional analysis and uses language that is notably absent from his Appellate Division papers. It seems reasonable to infer that the difference in argument is the result of petitioner's awareness that to present a claim herein, it must be one of constitutional dimension, and the comparison between his papers here and his papers at the Appellate Division serves to underscore the fact that his argument to the state court was not presented in such terms.

733 F.Supp. at 22. Quite clearly petitioner's claims in Ground One of the petition are unexhausted.

*Ground Two*

■ The other claim in this petition, that admission of testimony concerning the sale of heroin to Serrano by petitioner's wife on the first day he went to the apartment was "an egregious due process violation" (Memorandum of Law in Support of Petition at 29), is likewise not exhausted because it was not presented in the state courts. In his Appellate Division brief, petitioner argued simply that permitting such evidence was error because it was irrelevant to the crimes for which petitioner was on trial. He relied upon decisions of the New York courts that evaluated evidence in terms of its probative worth as weighed against its possible prejudice. He did not assert any federal constitutional claim, did not employ any constitutional analysis, did not present any federal cases and did not present any New York State cases that employed constitutional analysis.

The state's Appellate Division brief and the authorities cited therein also analyzed the admissibility of challenged evidence in terms of its relevance versus prejudice under New York State law.

■ Indeed, generally an evidentiary ruling is not a matter of federal constitutional law; an erroneous evidentiary ruling can, however, rise to the level of a constitutional claim cognizable on a habeas corpus petition if it is shown that the error so infected the proceedings as to have denied the petitioner a trial affording due process of law by rendering it fundamentally unfair. *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir.1985); *Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983); *Roberts v. Scully,* 875 F.Supp. 182, 188–89 (S.D.N.Y.), *aff'd,* 71 F.3d 406 (2d Cir.1995); *Alvarez v. Scully,* 833 F.Supp. 1000, 1005–06 (S.D.N.Y.1993). In the instant case, the Appellate Division was not presented with such a claim and its decision on the issue with which it was presented, based on New York law, confirms that.[7] The Supreme Court's most recent pronouncement on this issue in *Duncan v. Henry* happened to involve similar facts. There, the petitioner, who had been convicted of molesting a student, had challenged the admission of testimony by the parent of another child who claimed to have been molested 20 years previously. Petitioner had argued his appeal on the evidentiary issue on the basis of California evidentiary law and the California Constitution. His federal habeas corpus petition alleged the error was a denial of due process under the United States Constitution. The Supreme Court reversed the findings of the lower courts that the petitioner had exhausted his state remedies, saying as follows:

> [Petitioner] did not apprise the state court of his claim that the evidentiary ruling of

---

**7.** The Appellate Division held:

> It is well established that, even though evidence of uncharged crimes is not admissible, when it is offered for the purpose of establishing a defendant's criminal propensity, such evidence may be admissible, when it is inextricably interwoven with the charged crime, and, its probative value outweighs any possible prejudice. (*People v. Vails,* 43 N.Y.2d 364, 368–369, 401 N.Y.S.2d 479, 372 N.E.2d 320 (1977)).

> After our review of the evidence, we find that the Trial Court gave adequate limiting instructions with reference to such evidence.

*People v. Colon,* 151 A.D.2d at 154, 547 N.Y.S.2d at 16. (The trial court had told the jury that the testimony was background information and did not relate to the two sales of drugs with which petitioner was charged).

which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.... The California Court of Appeal analyzed the evidentiary error by asking whether its prejudicial effect outweighed its probative value, not whether it was so inflammatory as to prevent a fair trial.... [T]hose standards are no. more than " 'somewhat similar,' " not "virtually identical" as claimed by Justice Stevens. Both *Picard* and *Harless* emphasized that mere similarity of claims is insufficient to exhaust. *Picard, supra,* 404 U.S. at 276, 92 S.Ct. at 512–513; *Harless, supra,* 459 U.S. at 6, 103 S.Ct. at 277. The state court, when presented with respondent's claim of error under the California Evidentiary Code, understandably confined its analysis to the application of state law.

513 U.S. at 366, 115 S.Ct. 887 (citations omitted). Indeed, in *Petrucelli v. Coombe,* the Second Circuit explained that an argument that prejudice caused by the admission of evidence far outweighed its probative value calls to mind not federal constitutional doctrine, "but the common law or statutory authority that evidence ... may be excluded where it is more prejudicial than probative." 735 F.2d at 688. *See also Canteen v. Kelly,* No. 86 Civ. 3951(MJL), 1989 WL 116287, at *5 (S.D.N.Y. Sept.27, 1989) ("Although, as noted, erroneous admission of highly prejudicial and irrelevant evidence can amount to a constitutional violation if the error was sufficiently egregious, evidentiary rulings of this type are typically adjudicated in non-constitutional terms and there was nothing in the facts averred to by petitioner in his state court brief to suggest to the Appellate Division that he was making a potential constitutional claim"); *Ayala v. Scully,* 640 F.Supp. 179, 181–82 (S.D.N.Y.1986) (where petitioner challenged the trial court's admission into evidence of a sale of narcotics other than the one for which he was tried, this court explained, "Where, as here, ... petitioner simply framed the issue in terms of a state law evidentiary violation by arguing that the slight probative value of the evidence admitted was outweighed by the 'prejudice to the accused,' the state court is not properly alerted to any federal constitutional claim"); *Reddy v. Coombe,* No. 84 Civ. 7602(JFK), 1984 WL 1182, at *2 (S.D.N.Y. Nov.2, 1984) ("Although petitioner asserted on direct appeal that the trial court erroneously admitted highly inflammatory photographs of the deceased, the probative value of which was outweighed by their inflammatory nature, he did not present these claims in federal constitutional terms at that time. These claims were argued to the state courts in terms of New York law. Thus the state courts did not have notice of the constitutional nature of the claims").

Thus, Ground Two herein is unexhausted for the same reason as Ground one, as the state courts were not presented with petitioner's constitutional claims.

*Additional Considerations*

■ Even if it had been the case that petitioner had fairly presented his federal claims herein to the Appellate Division, dismissal of the petition would be warranted because he has failed to show that such claims were presented to the New York State Court of Appeals. As noted earlier, in order to exhaust a claim, a petitioner is required to present the claim at *each level* of the state courts to which the right to appeal lies. While we know that the Court of Appeals denied him leave to appeal the Appellate Division's judgment, *see* 75 N.Y.2d 917, 555 N.Y.S.2d 36, 554 N.E.2d 73, 1990 WL 73273, its decision consisted of only the one word "Denied." Upon my initial review of the petition, when I saw that neither petitioner nor respondent had submitted a copy of petitioner's application to the Court of Appeals for leave, my chambers called both petitioner's and respondent's attorneys to obtain it. After sixteen further phone calls, because neither petitioner nor respondent could produce it, I directed respondent to obtain it from the files at the Court of Appeals. On June 17 I received a letter from the clerk of that court explaining that in accordance with the court's record retention policy, the files from 1990 have been destroyed.

■ On a petition for habeas corpus relief, it is the petitioner's burden of proving that

he has fully exhausted his state court remedies. *See, e.g., United States ex rel. Cuomo v. Fay,* 257 F.2d 438, 442 (2d Cir.1958), *cert. denied,* 358 U.S. 935, 79 S.Ct. 325, 3 L.Ed.2d 307 (1959); *Suarez v. Harris,* No. 78 Civ. 1955(RWS), 1978 U.S.Dist. LEXIS 15131, at *2 (S.D.N.Y. Oct. 4, 1978); *Howard v. Olgiati,* 435 F.Supp. 886, 888 (W.D.N.Y.1977). Petitioner here argued four issues in the Appellate Division. It is frequently the case that an application for leave to the Court of Appeals does not seek an appeal from all grounds raised in the Appellate Division. We cannot know whether the two issues here were presented, or, even if one or both were, whether done on a basis including his federal constitutional contentions herein, whether done only in the same form as presented to the Appellate Division, or whether based on any other arguments. Thus, petitioner has failed to show that he fully exhausted his claims even if they somehow could be seen to have been fairly presented to the Appellate Division. Moreover, if he had not presented them to the Court of Appeals, under New York procedural law he could now be barred from doing so, in which event the claims would be barred from our review under the federal doctrine of procedural forfeiture unless he made a showing here of both cause for the procedural default and prejudice. *See Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *Lynes v. Mitchell,* 894 F.Supp. 119, 123 (S.D.N.Y.1995), and discussion and authorities therein.

 A final matter that should be discussed is that 28 U.S.C. § 2254(b)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 100 Stat. 1214, provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." Although this petition was filed shortly before the effective date of this AEDPA provision giving the federal courts this discretion, it is nevertheless applicable. *See, e.g., Ramos v. Costello,* No. 96 Civ. 3659(LLS), 1997 WL 231129, at *5 (S.D.N.Y. May 7, 1997); *Loving v. O'Keefe,* 960 F.Supp. 46, 49–50 (S.D.N.Y.1997). In any event, even before the AEDPA, the court had the discretion to deny a claim on a habeas petition notwithstanding lack of exhaustion when that claim was patently without merit, *see Granberry v. Greer,* 481 U.S. 129, 136, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); *Reid v. Senkowski,* 961 F.2d 374, 377 (2d Cir.1992); indeed, I have so recommended in many cases because it is simply a waste of judicial resources in this court and in the state courts to send a petitioner back to the state courts to present to them claims that are clearly frivolous and then for the petitioner to refile here, nor would it serve any interest of comity or federalism. *See, e.g., Lawlor v. Scully,* No. 93 Civ. 2985(JES)(SEG), 1996 WL 641635 (S.D.N.Y. Oct. 22, 1996); *Canargo v. Bara,* No. 89 Civ. 3250(RPP)(SEG), 1990 WL 26921 (S.D.N.Y. March 5, 1990). In addition, even though a petitioner may not have presented to the state courts a claim set forth in the petition, it can be deemed nevertheless exhausted " 'if it is clear that the state court would hold the claim procedurally barred,' " *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (quoting *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)), because the petitioner had not presented it on appeal or in any appropriate collateral motion in the state courts. *Lawlor v. Scully,* 1996 WL 641635, at *4; *Lynes v. Mitchell,* 894 F.Supp. 119, 122 (S.D.N.Y.1995), *aff'd,* 104 F.3d 355, 1996 WL 692513 (2d Cir.1996); *Camarano v. Irvin,* 902 F.Supp. 358, 365–66 (S.D.N.Y.1994), *aff'd,* 122 F.3d 1055, 1995 WL 595566 (2d Cir.1995). In such event, however, as mentioned above, the claim is jurisdictionally barred from our review under the doctrine of procedural forfeiture, requiring its dismissal with prejudice.

 Here, however, we should not use our discretionary power to entertain the petition on its merits both because it is not on its face patently frivolous nor is it quite clear that the state courts will find the claims procedurally barred. Rather, we should allow the state the opportunity to consider petitioner's constitutional claims. *See, e.g., Brown v. Miller,* No. 97 Civ. 1874(SS) 1998 WL 91081 (S.D.N.Y. March 3, 1998). In the recent *Brown* case, the petitioner raised three claims. This court found at least one of them, that the petitioner's sentence was

excessive, to be unexhausted because it had been raised in the Appellate Division only on statutory grounds, explaining as follows:

I agree with the Magistrate Judge's analysis that this claim is unexhausted, because fair presentation of the claim to the state courts requires the petitioner to have alerted the state courts to the constitutional nature of his claim. *See Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995).

However, I disagree with Magistrate Judge Dolinger's conclusion that there is no avenue by which to press this claim in the New York state courts. Magistrate Judge Dolinger found that Brown "cannot obtain collateral review of his sentencing claim since it has already been adjudicated on the merits by the Appellate Division," relying on N.Y.Crim.Proc.L. § 440.10(2)(a), which states that "the court must deny a motion to vacate when ... the ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment." However, it is precisely because the petitioner's constitutional claim was not pressed on appeal that the claim is unexhausted in the first place.

While petitioner here clearly *could* have raised his federal constitutional claims on his appeal, and N.Y.Crim.Proc.L. § 440.10(2) provides that the New York court is to deny a § 440.10 motion when there was an "unjustifiable failure to raise such ground or issue upon an appeal," in the circumstances of this petition the New York courts should be given the opportunity to decide whether his failure to do so was justified. (Moreover, even if found unjustified, they can nevertheless hear his claims "in the interest of justice and for good cause shown." *See* N.Y.Crim. Proc.L. § 440.10(3)). The Appellate Division, although affirming petitioner's convic-

tion given the weight of the evidence against him and in light of counsel's failure to have objected to the procedure, clearly was troubled by what had occurred in the trial court. With respect to the submission of the transcript to the jury, it stated:

... [W]e express our disapproval of the practice of submitting a transcript of testimony for review in the jury room. Although in complying with a jury's request for a readback of testimony, a Trial Court "is vested with some measure of discretion in framing its response" (*People v. Malloy, supra* at 302, 55 N.Y.2d 296, 449 N.Y.S.2d 168, 434 N.E.2d 237), nevertheless, in our opinion, the best practice is for Trial Courts to direct a readback in the courtroom, in the presence of defendant, and, counsel.

We further hold, that, when a defendant objects to any technique that a Trial Court proposes to use to provide testimony to a jury, which constitutes anything other than a readback, the Trial Court must direct a readback in the courtroom with defendant and counsel present.

*People v. Colon,* 151 A.D.2d at 153–54, 547 N.Y.S.2d at 16. I further note that, although the state had argued on appeal that petitioner's counsel's failure to have objected constituted a bar to the issues being raised on appeal under New York procedural law, the Appellate Division did not even mention the procedural ground and cited the issue in full on its merits (which it has the discretion to do in a case it believes, presumably, warrants hearing and a full written opinion). *See* N.Y.Crim.Proc.L. § 470.15(3)(c), (6)(a). Not having considered petitioner's constitutional claims herein nor any of the authorities cited in the petition, the New York courts should be the ones to decide whether they will.[8]

---

**8.** Cases have been decided since this petition was briefed which petitioner will, no doubt, also wish to present on this issue. *See, e.g., United States v. Escotto,* 121 F.3d 81 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 720, 139 L.Ed.2d 660 (1998), where the Second Circuit explained that while some circuits have concluded there is no material difference between giving a jury transcripts of trial testimony and providing in-court readbacks, others have found unsupervised access to a transcript enhances the danger that jurors may unduly emphasize discrete sections of

testimony. 121 F.3d at 84. While this circuit in *Escotto* concluded that the district court's having provided a portion of transcript in that case did not warrant reversal, it emphasized that when providing transcripts appropriate cautionary instructions should be given. In petitioner's case herein, no instructions were given. *See also United States v. Russo,* 110 F.3d 948, 954 (2d Cir.1997) (district court had "carefully minimized the risk of any misuse of the written charge in the jury room by cautioning the jurors

Similarly, with respect to Ground Two, the Appellate Division was also troubled by the testimony concerning the sale of heroin by petitioner's wife (to which counsel had objected) and stated that "[a]lthough the Court of Appeals has held '[s]uch testimony . . . [is] admissible to complete the narrative of the episode . . .' (*People v. Gines*, 36 N.Y.2d 932–933, 373 N.Y.S.2d 543, 335 N.E.2d 850 (1975)), we feel that same is not the most desirable practice." *People v. Colon*, 151 A.D.2d at 154, 547 N.Y.S.2d at 16.

Thus, without intending to intimate at this time any view as to the merits of the various federal constitutional arguments petitioner presents herein, I find the interests of comity and the statutory exhaustion requirement best served in this case by allowing the state courts the first opportunity to pass on those claims. (Petitioner's novel equal protection claim, regardless of its merit as a matter of federal constitutional law, raises as well interpretation of the New York Constitution and construction of N.Y.Crim.Proc.L. §§ 310.20 and 310.30 and is particularly one which the New York courts should have the opportunity to hear, not only for federal habeas corpus exhaustion purposes but also because it would be appropriate and helpful to have the New York courts' guidance on it.) In following this procedure in *Brown v. Miller*, this court explained:

> Although [the AEDPA] . . . now gives this court the discretion to deny (but not grant) unexhausted petitions on the merits, this Court declines to exercise that discretion in this case. Perhaps such discretion would be appropriate where a petition was "patently frivolous," see Rodriguez v. Miller, No. 96 Civ. 4723, 1997 U.S.Dist. Lexis 14742, at *8, 1997 WL 599388, at *3 (S.D.N.Y. Sept. 29, 1997), but this is not such a case. The Court believes that it is still the best policy to "allow[ ] the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Rose*, 455 U.S. at 518, 102 S.Ct. at

1203 (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981)).

1998 WL 91081, at *2. *See also Walker v. Miller*, 959 F.Supp. 638, 642 (S.D.N.Y.1997) ("The Court in this case declines to exercise its discretion to hear Walker's unexhausted claims on the merits"); *Canteen v. Kelly*, 1989 WL 116287, at *6 ("Whether or not petitioner's failure to assert his constitutional claim . . . in state court was 'justifiable,' 'is a matter of New York law to be decided by New York courts and not by federal court predictions of what stances those courts will take' " (quoting *Wilson v. Fogg*, 571 F.2d 91, 95 (2d Cir.1978))); *Reddy v. Coombe*, 1984 WL 1182, at *2 ("Whether petitioner's failure to raise his federal claims on direct appeal was justified, however, is an issue for the New York state courts to determine. . . . [The exhaustion] requirement 'minimizes friction between our federal and state systems of justice by allowing the state an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights' " (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981))); *Sabino v. LeFevre*, 490 F.Supp. 183, 188 n. 3 (S.D.N.Y.), *aff'd*, 630 F.2d 919 (2d Cir.1980) ("Even if there were some doubt as to the availability of relief in the New York courts, we still would give its courts the first chance to review their alleged errors so long as they have not authoritatively shown that no further relief is available" (citation omitted)).[9]

### CONCLUSION

For the above reasons, this petition should be dismissed without prejudice.

Copies of this Report and Recommendation were mailed to:

Anastasios Sarikas, Esq.

23–09 31st Street

Astoria, New York 11105

Nancy Killian, Esq.

Assistant District Attorney

---

to consider the charge as a whole and to seek clarification if necessary.").

**9.** I note, as pointed out in *Walker v. Miller*, where this court similarly dismissed the petition for failure to exhaust state remedies rather than us-

ing its discretionary power under the AEDPA, that petitioner "should not be heard to complain about the Court's decision. Under the AEDPA, the only way this Court can reach the merits . . . is to deny them." 959 F.Supp. at 643.

Bronx County

215 East 161st Street

Bronx, New York 10451

The parties are hereby directed that if you have any objections to this Report and Recommendation you must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court and send copies to the Honorable Lewis A. Kaplan, to the opposing party and to the undersigned. Failure to file objections within ten (10) days will preclude later appellate review of any order that will be entered by Judge Kaplan. *See* 28 U.S.C. § 636(b)(1); Rules 6(a), 6(e), and 72(b) of the Federal Rules of Civil Procedure; *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); *McCarthy v. Manson,* 714 F.2d 234, 237 (2d Cir.1983) (per curiam).

July 9, 1998.