**Pedro Jose GIL, Petitioner,**

v.

**William MAZZUCA, Acting Superintendant, Fishkill Correctional Facility, Respondent.**

**No. 99 Civ. 11534 NRB.**

United States District Court, S.D. New York.

March 28, 2000.

Karen M. Kalikow, Legal Aid Society, New York City, for petitioner.

Mark Dwyer, Robert M. Morgenthau, D.A., New York City, for respondents.

## OPINION AND ORDER

BUCHWALD, District Judge.

Petitioner, Pedro Jose Gil ("Gil") brings this habeas petition pursuant to 28 U.S.C. § 2254 seeking to overturn his 1995 conviction in New York County Supreme Court for one count of manslaughter in the second degree, N.Y. Penal Law § 125.10. He was sentenced to and is serving a term of five to fifteen years. This Court, having reviewed the record and having heard oral argument on March 10, 2000, can find no constitutional error in petitioner's trial. Accordingly, the writ of habeas corpus is denied.

## BACKGROUND

Petitioner admits to the basic facts that led to his arrest and conviction. On October 8, 1993, Gil was gathered with several friends at 175th Street just west of Am-

sterdam Avenue in their Washington Heights neighborhood. Along with others in the neighborhood, petitioner was a witness to a commotion that developed when a convoy of City tow trucks arrived to remove double-parked cars from the block and drivers rushed to remove the cars. Police who escorted the tow trucks confronted some of the drivers' friends, which led to arrests and further escalated the tension between the crowds on the street and the growing number of police who arrived at the scene. Petitioner's friends were among those arrested. Following their arrests, petitioner left the street and entered his own apartment building at the northeast end of the block, where he went to the roof.

Police Officer John Williamson ("Williamson") was one of the police called to the scene to help control the crowds. Along with other officers, Williamson cleared the sidewalk in front of petitioner's building and, while standing in the street, helped to guide a tow truck along the north curb of 175th Street. From his vantage point on the roof, petitioner "lobbed a bucket containing hard plaster left behind by a roof repairer, which fell on Officer Williamson and killed him." Petitioner's Memorandum of Law in Support of Petition for a Writ of Habeas Corpus ("Pet.Mem.") at 2–3. The bucket fell toward the street in a southwest direction and landed on Williamson's head, crushing his skull and driving his body against the car being pulled by the tow truck. Williamson was taken to a nearby hospital, where he died of massive brain injuries.

The following day, petitioner left New York and flew to the Dominican Republic. He returned to New York on October 11, 1993 and was immediately arrested at John F. Kennedy International Airport. Petitioner admitted to police that he had thrown the bucket but maintains that "he never intended to hurt anyone; rather, he lobbed the bucket over the [three foot] roof ledge intending it to hit the empty 20–foot–wide sidewalk below to make a loud noise [and thus] distract the throng of police officers arresting people in his neighborhood." Pet. Mem. at 3.

Petitioner was indicted by a grand jury on November 4, 1993 for Murder in the Second Degree, N.Y. Penal Law § 125.25(2) (depraved indifference to human life). His trial before New York County Supreme Court (Rothwax, J, presiding) lasted from jury selection on December 12, 1994 to the verdict on February 3, 1995. The trial was prolonged, in large part, by the litigation of the tumultuous events that took place on 175th Street on the day of Officer Williamson's death. In addition to several character witnesses, petitioner proffered the testimony of three experts to assist in his defense: Dr. Sanford Drob ("Drob"), a Bellevue Hospital psychologist who would testify as to petitioner's "cognitive deficits which impair his ability 'to perceive things,' 'to use judgment,' 'to perceive things,' [and] 'to cope with stress;' " Professor Michael Manual ("Manual"), a physicist who would testify about the bucket's trajectory; and Dr. Michael McCloskey ("McCloskey"), a Johns Hopkins University psychologist proffered to testify concerning people's misperceptions about the laws of physics. Pet. Mem. at 10–13, 25–32.

Although the trial court allowed Drob and Manual to testify, it granted the People's motion to exclude the testimony of McCloskey. After Justice Rothwax reviewed written submissions by both parties and the *amicus curiae* American Psychological Association, as well as McCloskey's published literature, and heard oral argument, he issued his decision in a January 3, 1995 bench ruling. He found that McCloskey's proffered testimony would not have assisted the jurors in resolving the issues presented in the trial since McCloskey's experiments focused on quantifying the likelihood that a person throwing a bucket from a building would have overshot an intended target rather than the ultimate *mens rea* question of whether petitioner had consciously disregarded the

risks posed by the act itself. Trial Transcript at ("Tr.") 2–23.[1] Justice Rothwax concluded that McCloskey's proposed testimony could not assist jurors in determining whether defendant had consciously disregarded the risks that his actions would create and would, instead, only "confuse the jury." *Id.* at 12–14.[2]

At the conclusion of the proceedings, Justice Rothwax instructed the jury on Murder in the Second Degree and the lesser included offenses of Manslaughter in the Second Degree, § 125.15, and Criminally Negligent Homicide, § 125.10. The jury voted to acquit petitioner on the murder charge and convict him on the manslaughter charge. Petitioner filed a timely appeal, which was rejected by the Appellate Division, *People v. Gil,* 251 A.D.2d 121, 674 N.Y.S.2d 651 (1st Dep't 1998). The New York Court of Appeals denied petitioner permission for further direct appeal, *People v. Gil,* 92 N.Y.2d 982, 706 N.E.2d 751, 683 N.Y.S.2d 763 (1998), and reached the same conclusion again on reconsideration, 92 N.Y.2d 1049, 708 N.E.2d 184, 685 N.Y.S.2d 427 (1999). Petitioner filed the instant petition for a writ of habeas corpus on November 23, 1999.

## DISCUSSION

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides for the following standard of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). With respect to factual findings, Section 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and that petitioner is required to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). With respect to mixed questions of law and fact, the Second Circuit has

yet to determine under what circumstances a state court decision is reviewed de novo to determine whether it is "contrary to" clearly established federal law, instead of being reviewed under the more deferential "reasonable application of" standard.

*Smalls v. Batista,* 191 F.3d 272, (2d Cir. 1999). We need not weigh in on the proper standard of review to be applied in this case because petitioner has failed to show error by the state court even under the more searching standard.

Petitioner presents one issue in his petition. He maintains that he was "deprived of his constitutional right to present a defense by the [trial] court's order precluding the defense from presenting expert testimony [concerning] people's misconceptions of basic laws of physics—where the proffered testimony would have rebutted a crucial prosecution inference based on popular misconceptions regarding petitioner's culpable mental state." Pet. Mem. at 2.

1. Based on his analysis of the facts, Justice Rothwax also distinguished between petitioner's act of throwing the bucket off of the building and McCloskey's experiments. None of McCloskey's published experiments concerned objects thrown from heights (Tr. at 9–12, 20–23) and the experiments he had done in preparation for trial did not replicate petitioner's circumstance, "a situation [in] which

a person is either aiming in anger or throwing in anger." *Id.* at 12.

2. Justice Rothwax reaffirmed this conclusion upon petitioner's motion to renew and reargue the question upon the completion of the People's case. Tr. 2808.

Before we address the substance of petitioner's constitutional claim, though, we must begin by analyzing its structure.

## A. Structural Problems in Petitioner's Claim

Petitioner's claim is based on the different mental states required under New York Penal Law with respect to the crime charged and its lesser included offenses. Whereas the charge of which he was convicted, second-degree manslaughter, entails the mental state of recklessness,[3] the lesser included offense of criminally negligent homicide involves the mental state of criminal negligence.[4]

In sum, petitioner asks us to determine whether he was denied his constitutional right to present a defense to the greater *mens rea* of recklessness,[5] despite his claim that he possessed the lesser *mens rea* of criminal negligence.[6] Petitioner claims that McCloskey's proffered testimony would have established that he "failed to perceive" a risk of killing someone by throwing a bucket of plaster off of a building (criminal negligence) rather than being "aware of and consciously disregard[ing]" such a substantial risk.

However, the Appellate Division made it clear that even if petitioner's intent was just as he described, such conduct inherently rises to the level of reckless activity. *See Gil,* 251 A.D.2d at 122–23, 674 N.Y.S.2d at 652–53 ("In any event, the

expert's testimony, even if admitted, had no reasonable possibility of affecting the jury's verdict of manslaughter in the second degree [as t]here was ample evidence of recklessness, even accepting defendant's contention that he intended the bucket to land safely on a clear sidewalk.").

 In our habeas review of petitioner's conviction, we are mindful that the role of federal courts is limited to determining whether a conviction violates the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). In the habeas context and otherwise, it is well within the province of the state court systems to define the conduct that constitutes one specific offense as opposed to another, and what punishment is merited for such conduct. *See, Fernandez v. Dufrain,* 11 F.Supp.2d 407, 409 (S.D.N.Y.1998) (finding that where a New York court ruled that the *mens rea* of a certain offense can be satisfied by the proof offered at trial, "[t]his Court has no authority to disturb that conclusion as a matter of New York law"). *See also Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) ("We will not attempt to precisely delineate the particular types of conduct and states of mind warranting imposition of the death penalty."). Here, the New York courts have made a clear determination that, even taking petitioner's claimed intent at face val-

---

**3.** N.Y. Penal Law § 125.15(1) provides that a "person is guilty of manslaughter in the second degree when [he] recklessly causes the death of another person."

**4.** N.Y. Penal Law § 125.10 provides that a "person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

**5.** N.Y. Penal Law § 15.05(3) defines the mental state of recklessness as follows: "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof

constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

**6.** N.Y. Penal Law § 15.05(4) defines the mental state of criminal negligence as follows: "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining and offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ue, his conduct constitutes recklessness and supports a finding of manslaughter in the second degree. As a result, no constitutional error can be found where petitioner's real complaint is with the state's definition of "recklessness."

## B. *Constitutional Analysis*

 For the sake of completeness, we shall also evaluate whether, even if the New York courts had not resolved the definitional problem, the trial court committed constitutional error in excluding the proffered expert testimony. The right of a criminal defendant to present witnesses is protected by both the Due Process and Compulsory Clauses of the Constitution. *See, e.g., Taylor v. Illinois,* 484 U.S. 400, 498–09, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The right, however, is not absolute. In presenting evidence, parties "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. In addition, defendant's right to present "expert testimony is limited by the requirements of relevancy and by the trial court's traditional discretion to prevent prejudicial or confusing testimony." *Agard v. Portuondo,* 117 F.3d 696, 704–05 (2d Cir. 1997).[7]

 Where a trial court's purported errors center around excluded evidence, the reviewing federal "court's duty on a petition for habeas corpus is to determine whether the excluded testimony was material to the presentation of the defense so as to deprive the defendant of fundamental fairness." *Rosario v. Kuhlman,* 839 F.2d 918, 924 (2d Cir.1988). The court must determine whether the exclusion (a) "was

an error of constitutional dimension" and, if so, (b) "whether the constitutional error was harmless." *Id.*

### 1. *Constitutional Error*

Petitioners face a high burden in seeking to demonstrate that a trial court's decision to exclude expert testimony is "contrary to" or an "unreasonable application of" clearly established federal law. *See United States v. Lumpkin,* 192 F.3d 280, 289 (2d Cir.1999). ("A decision to exclude expert testimony rests soundly with the discretion of the trial court and shall be sustained unless 'manifestly erroneous.' "); *Gantt v. Artuz,* No. 97 Civ. 3032, 1999 WL 1206733, at *3 (S.D.N.Y. Dec. 16, 1999) ("An evidentiary ruling is generally not a matter of federal constitutional law.") (citing *Colon v. Johnson,* 19 F.Supp.2d 112, 118 (S.D.N.Y.1998)); *McCray v. Artuz,* No. 93 Civ. 5757, 1994 WL 603057, at *2 (S.D.N.Y. Nov. 3, 1994) (noting that a federal court has a limited role to play in assessing the merit of state evidentiary rulings, and may issue a writ only where the petitioner can show that the erroneous rulings were of a constitutional magnitude).

 In this case, petitioner has failed to make a showing that meets this burden. Nowhere in all of petitioner's 57–page brief in support of this writ, or in oral argument before this court, or in our own independent research, were we able to find any cases that stand for the proposition that the expert testimony offered here is constitutionally mandated. On the contrary, the trial judge's evaluation that the proposed expert testimony differs enough from the facts of this case that it might confuse the jury is precisely the sort of discretionary judgment that courts are permitted to make. *See Agard,* 117 F.3d at

---

7. Recently, the United States Supreme Court reversed the Second Circuit's holding in *Agard* on other grounds. *Portuondo v. Agard,* —— U.S. ——, 120 S.Ct. 1119, 146 L.Ed.2d 47 (Mar. 6, 2000). However, the Court left intact the Second Circuit's holding excusing the

trial court's exclusion of expert testimony as harmless error. In fact, the Court restored the conviction, holding that the prosecutor's comments in that case also did not violate the petitioner's constitutional rights.

704–05. Indeed, we concur with the trial and appellate courts' evaluation that the issue of whether petitioner intended the bucket to hit the sidewalk or the street does not assist the jury in determining whether such an act is reckless. Even assuming that petitioner did in fact make sure that no one was on the sidewalk when he "lobbed" the bucket, any number of scenarios could have resulted in someone from petitioner's building or the crowd of onlookers entering the zone of danger once the bucket had left petitioner's hands. The proposed testimony could, in fact, have served to confuse the jury into believing their task was to determine the spot at which petitioner aimed, rather than whether petitioner himself disregarded or failed to perceive the risks associated with his act. As such, the trial judge's order precluding McCloskey's testimony did not operate to deprive petitioner of a constitutionally mandated right.[8]

### 2. *Harmless Error*

Even if it was error for the trial court to exclude petitioner's proposed expert testimony, such error was rendered harmless by the fact that the defendant was nevertheless able to put the issue before the jury. *See, e.g., Agard*, 117 F.3d at 706–07 (finding that an exclusion of expert testimony was "saved . . . from rising to the level of constitutional harm because it did not deprive [the defendant] of the opportunity to make an argument to the jury").

As the Appellate Division noted, petitioner was permitted to offer the testimony of Professor Manual, "an expert in the field of physics, as well as the testimony of [Dr. Drob,] a psychologist who had examined defendant's ability to appreciate the risk involved in his actions." *Gil*, 251 A.D.2d at 123, 674 N.Y.S.2d at 652–53. Dr. Manual in particular was permitted to give extended testimony on the difference between the incorrect "straight-down" trajectory and the "parabolic" trajectory of a falling object, that "obeys the laws of physics." Tr. 3447–63. Dr. Drob testified that petitioner was "unable to process the information . . . that there was a . . . risk at all that somebody was going to be harmed, somebody was going to be killed." Tr. 3260–61. In the defense summation, petitioner's able counsel was able to argue to the jury that petitioner's inability to understand the laws of physics negated a finding of reckless intent. Tr. 3989–93. Therefore, the expert's exclusion did not deprive petitioner of the "opportunity to make [his] argument to the jury." *See Agard*, 117 F.3d at 706–07. In spite of this testimony, the jury determined to convict petitioner of the crime of second-degree manslaughter.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. As petitioner has not made a substantial showing of the denial of a Constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. *See also United States v. Perez*, 129 F.3d 255 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

---

**8.** Petitioner's arguments against the prosecution's other asserted grounds for preclusion of the proposed testimony, Pet. Mem. at 49–51, are unavailing because they do nothing to refute the actual basis of the trial judge's ruling.